Pee Curiam :
This case was referred to Trial Commissioner Lloyd Fletcher with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on October 5,1965. Defendant filed exceptions to the commissioner’s opinion and report and the case was submitted to the court on the briefs of the parties and oral argument of counsel. Since the court is in agreement with the opinion, findings and recommendation for conclusion of law of the trial commissioner, it hereby adopts the same, as hereinafter set forth, as the basis for its judgment in this case. Plaintiff is therefore entitled to recover and judgment is entered for plaintiff with the amount of recovery, if any, to be determined pursuant to Pule 47(c).
OPINION OP COMMISSIONER *
Fletcher, Commissioner:
On April 16, 1965, the court acted on defendant’s motion to dismiss the petition in this case. With respect to plaintiff’s *1106 alternative claims for either Army disability retirement pay or Air Force disability retirement pay, the court concluded that the statute of limitations barred those two claims and, as to them, the petition was dismissed.
However, plaintiff’s petition presents a third claim for active duty pay of a master sergeant, and the court held this claim to be a continuing one. Hence, with respect to this claim, the petition was dismissed only as to active duty pay which accrued before July 27, 1955, the date six years prior to the filing of the petition. As to the remainder of the claim for active duty pay, defendant’s motion to dismiss was denied, and the case was returned to the commissioner for further proceedings. See Diamond v. United States, 170 Ct. Cl. 166, 177-78, 344 F. 2d 703, 709-10 (1965).
The facts regarding the claim for active duty pay had been presented in a trial held at Denver, Colorado, prior to the filing by defendant of its motion to dismiss. Under Eule 53(b) (2), of course, the effect of defendant’s filing of its dispositive motion was to suspend the reference of the case to the commissioner so that, at the time of the court’s decision, no findings of fact by the commissioner were before it. In considering the claim for active duty pay, the court, speaking through Judge Collins, concluded that:
* * * only a narrow fact question is involved — that is, whether plaintiff made a timely “application for reenlistment.”
* ❖ # ❖ ❖
* * * If the evidence which plaintiff has submitted establishes that he did apply for reenlistment and that his statutory right to reenlist was violated, then recovery in this court is possible. 170 Ct. Cl. 177.
The court declined to make any finding of fact in this respect without the benefit of (1) a report of the trial commissioner and (2) exceptions of the parties. 170 Ct. Cl. 177, ftn. 11. The case was therefore returned to the commissioner for such proceedings.
Thereafter, on May 28, 1965, pursuant to prior notice, counsel for the parties convened in conference with the commissioner. Counsel were in agreement that, under the court’s decision of April 16, 1965, the only remaining issue in this *1107 case was one of fact, namely, whether the plaintiff made a timely application for reenlistment. It was further agreed between counsel and the commissioner that the present proceedings for the determination of such factual issue should be limited to a determination of the right of plaintiff to recover, reserving the determination of the amount of recovery, if any, for further proceedings. Certain additional documentary evidence was submitted and received in evidence. Thereafter, proof was closed in due course.
In the findings of fact below, an effort has been made to restrict them (other than for clarifying background material) to the “narrow fact question” of whether plaintiff made a timely application for reenlistment. In summary, they show that plaintiff commenced his Army service as a commissioned officer in 1942 and, except for a short interruption, continuously served as such until December 13, 1947, when he was relieved from active duty in the rank of major. During that period of service he incurred, in line of duty, chronic peptic ulcer of the duodenum and chronic keratitis of the right eye.[1]
On December 31,1947, he enlisted in the Regular Army in the grade of master sergeant. He served in that grade until September 1948 when he was honorably discharged from the Army to become a commissioned officer in the Air Force Reserve. The Air Force sent him to Camp Kilmer, New Jersey, under orders contemplating active duty overseas. At Camp Kilmer, however, he suffered a recurrence of his ulcer condition which resulted in his being reassigned to Lowry Air Force Base in Colorado where he remained until June 14,1949. On that date the Air Force relieved him from active duty for failure to pass a physical examination.
Thereupon, on the same day, plaintiff applied for reenlistment in the Army in his former enlisted grade of master sergeant. He was given a physical examination by the examining physician, Dr. Carroll C. Shinn, at the Denver recruiting station, the circumstances of which are particularized in findings 6 and 7, infra. The physical examination disclosed evidence of plaintiff’s duodenal ulcer and keratitis. *1108 For that reason, Dr. Shinn, disqualified him, and he was not permitted to reenlist because of physical disability.
Plaintiff appears to have been aware, in a general way, that the failure of the Denver recruiting station to reenlist him, despite his physical disqualification, was unlawful. However, he did not press the matter further but accepted the rejection as final. He concluded that the rejection for reenlistment by reason of physical disability on the same day he had been relieved of active duty as an officer in the Air Force meant necessarily that he must be entitled to retirement by the Air Force for physical disability.
He proceeded on this theory for several years. In December 1952, plaintiff applied to the Air Force Board for the Correction of Military Records asking for the right to appear before a Disposition Board for retirement. After a review of the records, the Air Force Personnel Procurement Division advised that plaintiff’s rejection for reenlistment was “improper” and that he “should be authorized to enlist in the Regular Air Force in the grade of Master Sergeant with date of rank as 81 December 1947.” The Air Force Judge Advocate General, however, disagreed. In his view, since plaintiff’s enlisted status was in the Army rather than the Air Force, only the Department of the Army could afford relief. On December 9, 1957, the Board referred plaintiff to the Department of the Army.
Thereupon, he submitted to the Army Board for Correction of Military Records his application for a correction to show his reenlistment as a master sergeant on June 14, 1949. After formal hearing, the Army Board denied his request following which plaintiff filed suit in this court.
As was noted by the court in its previous opinion, plaintiff bases his action here upon the Act of July 14, 1939, ch. 267, 53 Stat. 1001. See Diamond, supra, 170 Ct. Cl. at 175. The pertinent part of the statute provides:
* * * hereafter any warrant officer or enlisted man of the Regular Army who shall serve on active duty as a Reserve officer of the Army of the United States or who shall be discharged to accept a commission in the Army of the United States and whose active service as a commissioned officer shall terminate honorably, shall be entitled, without regard to any physical disqualification *1109 incurred, or having its inception, while on active duty in line of duty, to reappointment as warrant officer or to reenlistment in the grade held prior to such commissioned service, without loss of service or seniority and without regard to whether a vacancy exists in the grade of warrant officer or in the appropriate enlisted grade: Provided, That application for reappointment or reenlistment shall be made within six months after the termination of such commissioned service in each case: * * *
The applicable regulations in effect at the times here material were Department of the Army Special Regulations 615-105-1, promulgated 15 April 1949. The pertinent parts of those regulations are reproduced in finding 13, infra,.
Plaintiff contends that on June 14, 1949, he made timely application for reenlistment, for an indefinite period, in his former enlisted grade of Regular Army master sergeant and that he was unlawfully rejected for such reenlistment as not being physically qualified for service in the Army due to disabilities incurred while on active duty in line of duty. In this contention plaintiff is clearly correct. By oral testimony of several witnesses and a plethora of documents, he has proved not only by a preponderance of the evidence but by clear and convincing evidence (Cf. Morris v. United States, 171 Ct. Cl. 220, 228 (1965)) the following facts:
(1) On the very day when his commissioned service terminated, he applied to the Denver recruiting station for reenlistment in the enlisted grade which he held prior to such commissioned service.
(2) At that time he had a physical disqualification incurred, or having its inception, while on active duty in line of duty.
The above quoted statute fits him “like a glove” and, accordingly, he was “entitled, without regard to any physical disqualification ... to reenlistment” in his former grade with no loss of seniority and irrespective of any existing vacancy. Yet a strange tiling happened on his way to completion of the reenlistment procedures, and he never made it. The examining physician at the recruiting station disqualified him for reenlistment by reason of duodenal ulcer and keratitis of the right eye. The Report of Medical Examination bears the notation “Rejected ”
*1110 A mere glance at the above statute and underlying regulations is sufficient to show that, in thus blocking- plaintiff’s attempt to reenlist, the doctor and all other recruiting personnel concerned with plaintiff’s application committed clear error. Taking their lead from Service v. Dulles, 354 U.S 363 (1957), the courts have consistently refused to countenance any such disregard by a Governmental department of the statutory law and its own regulations. See Cole v. United States, 171 Ct. Cl. 178, 187 (1965) ; Smith v. United States, 155 Ct. Cl. 682, 691 (1961) ; and Roberts v. Vance, 343 F. 2d 236 (D.C.Cir., 1964).
Hence, it is clear that in the present case the court will not lend its support to the Army’s rejection of plaintiff’s reenlistment attempt in the face of his clear entitlement thereto. Bather, it will regard that as done which ought to have been done and will treat plaintiff as having been a reenlisted master sergeant in the Army from June 14,1949. See Caddington v. United States, 147 Ct. Cl. 629, 178 F. Supp. 604 (1959) and Bianco v. United States, 171 Ct. Cl. 719 (1965).
Defendant, however, would have the court say that, because plaintiff did not make further attempts to reenlist during the crucial six-month period, he must be deemed to have withdrawn or abandoned his application of June 14, 1949. It is true that, despite his belief that he “had a right to reenlist,” plaintiff did not originally press the matter. But this was because he felt it would be futile to do so. Instead, he concluded (erroneously, as it developed) that the rejection for reenlistment meant he was eligible for disability retirement as an Air Force officer, and he pressed this erroneous theory for some years until the question was ultimately resolved against him by the Air Force Board for the Correction of Military [Records.
However, it was not plaintiff’s fault that he proceeded up a blind alley. If Army recruiting personnel at the Denver recruiting station had done what the statute and regulations so clearly required them to do on June 14,1949, this case, of course, would never have arisen. Nothing plaintiff did should have misled the Army. Bather, it was the unlawful rejection by the Army of plaintiff’s application which re- *1111 suited in trapping him into an erroneous theory as to his rights.
Defendant insists, however, that the letter of the Air Force to Senator Johnson dated September 14,1949 (see finding 10, infra) should have alerted plaintiff to his rights at a time prior to the expiration of the statutory six-month period and that the “normal thing” for plaintiff to do at that moment would have been a “direction” to process his application. If plaintiff had done so, there can be no doubt, says defendant, that he would have been reenlisted as a master sergeant as of June 14, 1949. This seems to be a kind of please-give-us-another-chance plea. But plaintiff felt that further efforts at Denver would have been futile. Perhaps, he was wrong in this feeling, but under this record it would seem to be about anyone’s guess as to what really would have happened.[2]
In early 1962 a diligent, but unsuccessful, search was made by the Army to locate an enlistment record for plaintiff marked “rejected.” There is nothing in the record to indicate what happened to plaintiff’s application for reenlistment.[3] Defendant hints darkly that plaintiff must therefore have retained and destroyed it. However, the record here does not justify any such inference, and surely it is not plaintiff’s burden to prove what disposition was made by defendant of its own records over which he had no control whatever.
For all the foregoing reasons, it seems to me abundantly clear that judgment in this case must be entered for plaintiff.
Findings of Fact
1. Plaintiff was bom May 18,1912, in Greece; he became a citizen of the United States in 1928 'by naturalization. He *1112 resides at 7121 East 6th Avenue, Denver, Colorado, and is employed as a municipal judge in and for the City and County of Denver, Colorado.
2. He accepted an appointment as second lieutenant, Infantry, Officers Reserve Corps, on September 21, 1939. He entered upon active duty in the Army as a second lieutenant March 13, 1942, and thereafter served on such active duty continuously to February 4,1947, when he was relieved therefrom, not for physical disability, in the grade of major, Army of the United States. During this period he incurred, in line of duty, chronic peptic ulcer of the duodenum and chronic keratitis of the right eye.
3. On April 23, 1947, he was recalled to active duty, in the grade of captain, Army of the United States, for the purpose of examination and reevaluation as to whether he was permanently incapacitated for military service. Following his appearance before an Army Retiring Board at Fitzsim-mons General Hospital, Denver, Colorado, in June 1947, he was found not incapacitated for active military service and, on December 13, 1947, was again relieved from active duty, not for physical disability, in the grade of major, Army of the United States.
4. On December 31,1947, plaintiff enlisted in the Regular Army, in the grade of master sergeant, for a period of three years. His place of enlistment was the Colorado and Wyoming Recruiting District, Denver, Colorado. Fie thereafter served on active duty in the Regular Army as a master sergeant, performing duties in the Public Information Section, Colorado and Wyoming Recruiting District, continuously to September 28,1948, when he was honorably discharged from the Army to enter upon extended active duty with the Air Force in the grade of captain, Air Force Reserve.
5. Effective September 29, 1948, plaintiff entered on extended active duty as a captain, Air Force Reserve, at Camp Kilmer, New Jersey, pursuant to orders which contemplated that he would be assigned active duty overseas. At Camp Kilmer, however, he suffered a recurrence of the ulcer condition incurred in line of duty during his prior active military service, and he was informed that he could not be transferred overseas in his then physical condition. He was sub *1113 sequently reassigned to the Office of Special Investigations, Lowry . Air Force Base, Colorado, where he remained on active duty as a captain, Air Force Reserve, continuously to June 14,1949, on which date he was relieved from active duty with the Air Force “by reason of physical disqualification as a result of failure to pass physical examination for entrance” on active duty.
6. On the morning of June 14, 1949, plaintiff took his Army of the United States Master Sergeant’s warrant of appointment, together with a copy of his Air Force separation physical examination report, to the Colorado and Wyoming Recruiting District, Denver, Colorado, with the intention of reenlisting in the Regular Army, for an indefinite period, in his former grade of master sergeant. He reported for initial processing to the “interview room,” where he completed an application for reenlistment in his own handwriting as was then required by existing Army procedures. He was then referred to the “testing room” where a mental examination was administered. Around mid-morning, after completion of the mental examination, plaintiff was directed to Dr. Carroll 0. Shinn, examining physician at the recruiting station. Sergeant Tokarski, Dr. Shinn’s corpsman, had plaintiff fill out (again in his own handwriting) a “Report of Medical History” (Armed Services Modification Standard Form 89). Sergeant Tokarski himself completed part of a “Report of Medical Examination” (Armed Services Modification Standard Form 88). Sergeant Tokarski was aware that plaintiff had come to the recruiting station for the purpose of reenlistment as a master sergeant. Both SF 88 and SF 89 contain the word “Reenlistment” under the heading “Purpose of Examination.” After Sergeant Tokarski had concluded his preliminary examination of plaintiff, Dr. Shinn personally continued the examination. Dr. Shinn had been told by Sergeant Tokarski that plaintiff was undjer examination for reenlistment in the Army as a master sergeant. The doctor questioned plaintiff concerning his relief from active duty as an Air Force officer, and was informed by plaintiff that he had been relieved from active duty as physically disabled. Dr. Shinn then looked at plaintiff’s separation physical examination report of June 9,1949. He *1114 told plaintiff to return to the recruiting station later in the afternoon, at which time he would discuss the matter further with plaintiff. Plaintiff accordingly left Dr. Shinn’s office, and the recruiting station, at approximately noon, June 14, 1949.
7. Plaintiff returned to the recruiting station at about 3:30 p.m. on June 14, 1949. Pie was told that Dr. Shinn had obtained and examined the X-rays taken at Lowry Air Force Base, in connection with plaintiff’s relief from active duty with the Air Force. As a result, Dr. Shinn had determined that plaintiff was not qualified for military service, and, accordingly, the doctor then completed and signed both a work copy and a typed copy of Standard Form 88, “Report of Medical Examination,” stating that plaintiff was not qualified for military service by reason of duodenal ulcer. At the top of the typed form there appear in handprinting the following-words: “Reenlistment Physical June 14, 1949 Rejection.” Plaintiff requested a copy of said medical report and protested that, notwithstanding his physical condition, he had a right to reenlist as a master sergeant. Dr. Shinn gave him a copy of the report but replied that plaintiff had a right to reenlist only if Dr. Shinn gave him that right, and that since plaintiff was physically disabled, he was rejected for reenlistment. Dr. Shinn’s affidavit dated May 26,1959, contained in plaintiff’s file before the Army Board for Correction of Military Records, states in pertinent part as follows:
That dan d. diamond, appeared before me for a physical examination, for re-enlistment as a Master Sergeant in the Regular Army, on June 14th, 1949.
That from the physical examination that I made of dan d. diamond, on the 14th day of June, 1949, it was determined that there was X-Ray evidence of active duodenal ulcer since 1946; Keratitis, Chronic, right eye, and I therefore, disqualified him for re-enlistment as a Master Sergeant, in the Regular Army, and made my report of Medical Examination on aemed forces modification standaRd foem 88, on June 14,1949.
Since plaintiff’s master sergeant’s warrant clearly showed that he had been appointed “Master Sergeant Infantry” in the “Army of the United States,” all Denver recruiting station personnel (whether Army or Air Force personnel) en *1115 gaged in processing bis application for reenlistment as a master sergeant were on notice tbat bis application was to tbe Army and not to tbe Air Force. From tbe above quoted affidavit, it is clear that Dr. Shinn was aware tbat tbe application bad been made to tbe Army.
8. Tbe enlistment record of a rejected applicant for enlistment or reenlistment should have been referred to the Administrative Section of the Denver recruiting station. Under existing regulations, enlistment records of rejected applicants without prior military records were retained at Denver for one year, and then destroyed. Enlistment records of rejected applicants who bad prior military service, as did plaintiff, should have been marked “rejected” and forwarded to tbe Demobilized Personnel Eecords Branch, St. Louis, Missouri. Although a diligent search has been made through the records of the United States Army Eecords Center, no enlistment record pertaining to plaintiff marked “rejected” has been found.
Despite defendant’s inability to locate such a record, the evidence shows clearly that on June 14,1949, plaintiff applied for reenlistment in the Eegular Army, for an indefinite period, in his former grade of Eegular Army master sergeant. The evidence further clearly shows that he was rejected for such reenlistment by the examining physician as not being physically qualified for service in the Army by reason of physical disabilities incurred in line of duty and incident to extended active service.
9. Within the six months following June 14, 1949, plaintiff made no further efforts to reenlist as a master sergeant in the Army. He believed (a) that having once been rejected in an attempt to do so, there was nothing more he could do in this direction, and (b) that if he were, as Dr. Shinn had found, not physically qualified to serve as an enlisted man, he was not physically qualified to serve as a commissioned officer and that he should therefore be retired for physical disability as an officer. Since June 14,1949, plaintiff has made persistent and numerous efforts directed towards correction of his military records to show either his retirement for physical disability from the Army or Air Force, or his reenlistment as a master sergeant in the Army *1116 on June 14, 1949. While Army and Air Force personnel responsible for consideration of these efforts have from time to time admitted, expressly or by implication, that the denial to plaintiff on June 14, 1949 of his right to reenlist was improper, they have disagreed as to which service had cognizance of the matter, and no remedial action has ever been taken.
On June 14,1949, plaintiff had completed seven years and 25 days of active service in components of the Army and the Air Force. If he had been allowed to reenlist on June 14, 1949, for an indefinite period as a master sergeant, and if he had remained on active duty thereafter, he would have completed 20 years of active service by May 20,1962.
10. Shortly after the rejection of his application for reenlistment, plaintiff sought the aid of Senator Edwin C. Johnson of Colorado. In response to several inquiries, Senator Johnson received a letter dated September 14,1949, from the Air Force Directorate of Legislation and Liaison. The letter stated that a careful review had been made of plaintiff’s eligibility for retirement and the adverse conclusion had been reached that he was not permanently incapacitated for active military service. The letter continued:
Captain Diamond states that he is not permitted to reenlist “because of this physical disqualification as found again upon recall to active duty.” It is our belief that the term “reenlist” as used by Captain Diamond, refers to his recall to active duty as an officer, since the circumstances which preclude his recall to active duty as an officer, would not militate against his desire to reenlist as an enlisted man. Existing regulations provide that enlisted men of the Regular Army or Regular Air Force who served on active duty as temporary officers shall be entitled, if such service is terminated honorably, to reenlist in the grade held prior to their commissioned service without regard to any physical disqualifications suffered during such service.
The language in the quoted paragraph struck Senator Johnson as a “peculiarity” since he was aware that plaintiff had already been rejected for reenlistment by the Denver recruiting station. Although by the date of the aforesaid letter, there remained three months within which plaintiff was entitled to reenlistment as a master sergeant, he made no *1117 further effort to reenlist. He continued to approach his problem on the theory that having been rejected by the Denver recruiting station on June 14, 1949, for physical disability, he was entitled to be retired as an Air Force officer for that same disability.
11. In December 1952, plaintiff applied to the Air Force Board for the Correction of Military Records asking for the right to appear before a Disposition Board for retirement. After a review of the records, the Air Force Personnel Procurement Division advised that plaintiff’s rejection for reenlistment was “improper” and that he “should be authorized to enlist in the Regular Air Force in the grade of Master Sergeant with date of rank as 31 December 1947.” The Air Force Judge Advocate General, however, disagreed. In his view, since plaintiff’s enlisted status was in the Army rather than the Air Force, only the Department of the Army could afford relief. On December 9, 1957, the Board referred plaintiff to the Department of the Army.
12. Plaintiff made application to the Army Board for Correction of Military Records, and on June 24, 1959, a formal hearing was held thereon in Washington, D.C. On the same day, the Army Board made its findings and conclusions. It recommended that plaintiff’s application for correction of military records be denied. The pertinent findings and conclusions of the Board are as follows:
THE BOARD FINDS :
* * si: :1c si:
d. that on 14 June 1949, at Colorado Armed Forces Examining Center, Denver, Colorado he [the applicant] underwent a physical examination for reenlistment and was found to be physically disqualified for military service because of an active duodenal ulcer; and that the report of physical examination on Standard Form 88 does not indicate whether he was rejected for reenlistment by tlie Army or by the Air Force.
e. that Paragraph 55c(3) of Army Regulations 140-5, dated 17 Jirne 1941, provides that an enlisted man on the active list of the Regular Army who is called to active duty as an officer will be discharged from the service for the convenience of the government on the day immediately preceding the date of commencement of active commissioned service; and that an enlisted man who tenders *1118 bimself for enlistment within six months after the termination of his commissioned service will, regardless of physical disqualification incurred or having its inception while on active duty in line of duty, be accepted and restored to the grade held by him before being discharged to accept such commission.
f. that on 18 September 1949 information relative to the foregoing Army Regulation was furnished to Senator Edwin C. Johnson who had requested reenlistment information in the applicant’s behalf; that the contents of such letter were admittedly known to the applicant; that there is no record that he timely presented himself for reenlistment in the Army pursuant to such letter; and that he has furnished conflicting information concerning whether, on 14 June 1949, he was denied reenlistment Toy the Air Force or by the Army.
THE BOARD CONCLUDES :
1. That the applicant’s allegation that the Army rejected him for reenlistment on 14 June 1949 is unsupported by the records.
2. That while the applicant was admittedly cognizant of the regulations which clearly provided that the Army reenlist him, his persistent failure to present himself to the Army for reenlistment within six months from 14 June 1949 is strongly indicative of negligence and lack of good faith on his part.
3. That in consideration of the foregoing findings and conclusions there is insufficient evidence of error or injustice in the applicant’s records to warrant granting the relief requested. [Emphasis supplied.]
Plaintiff’s request for reconsideration was denied by the Board on December 16, 1958. Plaintiff has exhausted his administrative remedies.
13. Department of the Army Special Regulations 615-105-1, promulgated 15 April 1949, and in effect throughout the period here material, provided in pertinent part that:
11. Periods of enlistment. — a. Enlistments and re-enlistments are authorized in the Regular Army and in the Air Force for 3, 4, 5, or 6 years, at the option of the individual enlisting.
b. In addition to the options authorized in a above, [certain] individuals * * * are authorized to reenlist in the Regular Army * * * for an unspecified period of time on a career basis * * *. An individual whose last period of active Federal service in the Army or the *1119 Air Force was in the status of a commissioned officer * * * is eligible for enlistment under the provisions of this subparagraph, provided such individual was serving on Federal active duty in one of the first three enlisted grades immediately prior to entry on active duty as a commissioned officer * * *; such commissioned * * * officer service has been continuous since entry thereon; and enlistment is accomplished in one of the first three enlisted grades within * * * (6 months from date of relief from active duty if enlistment is accomplished under the provisions of par. 145). * * *
* * * * *
14. Grades for enlistment — Former officers, warrant officers and flight officers. * * *.
5. Reenlistment of former Regular Army or Air Force enlisted men who served on active duty as Reserve officers or who were discharged to accept commissions as officers or appointments as warrant officers. — Former Regular Army or Regular Air Force enlisted men who served on active duty as Reserve officers or who were discharged to accept temporary commissions or appointments as warrant officers, provided service as a commissioned officer or warrant officer terminated honorably and application for reenlistment is made within 6 months after termination of such officer or warrant officer service, may be reenlisted in grades prescribed in (1), (2), (3) and (4) below, without regard to any physical disqualification incurred or having its inception, while on active duty in line of duty, and without regard to whether or not a vacancy exists in the appropriate enlisted grade:
(1) Any enlisted man of the Regular Army or Air Force who serves on active duty as a Reserve officer or who is discharged to accept a temporary commission in the Army or Air Force is entitled to reenlist in the Regular Army or Air Force in the permanent enlisted grade held immediately preceding such commissioned service.
* * # # *
18. Enlistment record. — * * *
$ ‡ ‡ ¡¡t
(2) The enlistment record of a rejected applicant will be marked “rejected” at the top of the front page and, except for an applicant with prior Army or Air Force service, will be filed at the place of rejection. Records of rejected applicants without prior service will be retained 1 year and then destroyed. The enlistment rec *1120 ord of a rejected applicant with, prior Army or Air Force service will be so marked and forwarded to Demobilized Personnel Becords Branch, Administration Center, Building 105, St. Louis 20, Missouri.
CONCLUSION OE Law
Upon the foregoing findings of fact which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and judgment is entered to that effect. The amount of recovery, if any, will be determined pursuant to Buie 47 (c).

 The opinion, findings of fact and recommended conclusion of law are submitted under the order of reference and Rule 47 on the issue of liability.

 In June 1947, an Army Retiring Board found that these diseases had not permanently incapacitated Mm for active military duty.

 In this connection, it is interesting to note tint tlie Army Board for Correction of Military Records ivas given the opportunity to correct the error ■which had occurred at Denver but refused to do so. See finding 12, infra. The Board refused to correct the error on the basis of an evasive finding that it was unable to determine whether plaintiff had been rejected for reenlistment by the Army or by the Air Force. Yet, the great weight of the evidence before the Board clearly showed that he had applied to the Denver recruiting station for reenlistment as a master sergeant in the Regular Army. Thus, was he whipsawed between the Air Force and the Army. See findings 7 and 11, infra.

 Under paragraph 18(a)(2) of the regulations (finding 13, infra) the application should have been marked “rejected” and forwarded to the Demobilized Personnel Records Branch of the Army in St. Louis, Missouri.