**Harold H. GEARINGER, as Executor of the Estate of Royal Barry Shaw**

v.

**The UNITED STATES.**

No. 489–54.

United States Court of Claims.

July 16, 1969.

Robert H. Reiter, Washington, D. C., attorney of record, for plaintiff. Spaulding, Reiter & Rose, Washington, D. C., of counsel.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

DAVIS, Judge.

About three years ago, the court held that Royal Barry Shaw was illegally discharged from the Navy in 1950 as a result of a court-martial conviction which was vitiated by a significant constitutional defect. Shaw v. United States, 357 F.2d 949, 174 Ct.Cl. 899 (1966).[1] We returned the case to the trial commissioner for computation of the amount of back pay and allowances due from the defendant. Commissioner Day, after further proceedings, reported the sum he believed to be owing. That aspect of the litigation was then briefed and argued to the judges (in December 1967), but before a decision could be rendered the Government filed, and the Supreme Court granted, a petition for certiorari (390 U.S. 1038 (1968)) to review our rulings in Augenblick v. United States, 377 F.2d 586, 180 Ct.Cl. 131 (1967), and Juhl v. United States, 181 Ct.Cl. 210, 383 F.2d 1009 (1967)— later, unrelated court-martial cases in which we had also invalidated the convictions. The Government asked us to suspend proceedings in the present action to await the Supreme Court's decision, and we granted that prayer because the Government was urging the Court to hold that we had no power to pass upon the validity of courts-martial. After the Court reversed *Augenblick* and *Juhl*, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), the defendant, relying on that determination, moved to dismiss this *Shaw* case entirely. In this opinion we dispose of that motion, as well as of the residue of the case which is still pending before us. We discuss, first, the issue of our jurisdiction to review Shaw's court-martial conviction in the light of the reversal of our *Augenblick* and *Juhl* judgments (Part I, *infra*); second, the constitutional invalidity of Shaw's conviction (Part II); and, third, the amount due his estate because of the conviction and his discharge from the service (Part III).

## I.

In its *Augenblick* and *Juhl* opinion, the Supreme Court deliberately abstained from deciding, and left open,

---

1. Shaw died on May 11, 1967, while this suit was in progress, and after the trial commissioner's report on the amount of recovery. The executor of his estate has been substituted as plaintiff.

the question of whether this court now has jurisdiction to review judgments of courts-martial for constitutional invalidity. 393 U.S. at 351–352, 89 S.Ct. 528.[2] There is therefore nothing in the Supreme Court's recent decision which compels us to withhold our hand without even considering (or reconsidering) whether the defect in Shaw's court-martial rose to constitutional level. In this posture of the matter, we reaffirm the conclusions in Part I of our earlier opinion in this case, 357 F.2d at 953–954, 174 Ct.Cl. at 903–906 and hold again that the Court of Claims has the competence to pass upon Shaw's claim that his court-martial was void because he was denied an important constitutional right. See also the discussion in Augenblick v. United States, supra, 377 F.2d at 591–593, 180 Ct.Cl. at 140–144, and in Juhl v. United States, supra, 383 F.2d at 1018, 1019, 1020, 1023, 181 Ct.Cl. at 227, 228–229, 230, 234–235.

■ It is appropriate, moreover, to repeat that Shaw's case is not governed by the Uniform Code of Military Justice, nor in particular by its Article 76, 10 U.S.C. § 876 (1964) (the "finality" clause), on which the Government placed its argument in Augenblick and Juhl that this court cannot review a court-martial even for constitutional invalidity.[3] The then Articles for the Government of the Navy, 34 U.S.C. § 1200 (1946), which controlled Shaw's military proceedings,[4] contained no comparable "finality" provision. The chief arguments for precluding this court from evaluating courts-martial, which the Government pressed upon the Supreme Court in Augenblick and Juhl and had earlier urged on this court in

those cases, are inapplicable to Shaw's litigation.

## II.

In our earlier opinion we pointed out that, on the Navy's own factual findings, it had convicted Lieut. Shaw of the crime of "fail[ing] safely to keep" Navy funds when the Navy itself determined that he had no criminal intent to convert, did not convert, and was not negligent, inefficient, or careless. 357 F.2d at 954–957, 174 Ct.Cl. at 906–910. To reach this result the Navy was required to, and did, impose upon him the burden of affirmatively proving that the loss was wholly attributable to another individual or circumstance. Proof of his own freedom from fault or negligence would not be, and was not, enough. In the absence of such affirmative demonstration that some other person or occurrence (e. g. fire) caused the loss, the accused was presumed to be guilty of negligence or fault, despite solid proof of his due care and lack of criminal intent. 357 F.2d at 956–957, 174 Ct.Cl. at 908–910. We held that the Navy could not constitutionally establish that presumption. Our reason was that, under the principles of Tot v. United States, 319 U.S. 463, 467–468, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), and United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965), there was "no rational connection between the fact proved and the ultimate fact presumed" in the circumstances here. 357 F.2d at 958–962, 174 Ct.Cl. at 911–919.

■ In its post-Augenblick motion to dismiss, the Government appears to say either that the validity of such presumptions can raise no constitutional

2. The Court decided that any errors in those two instances did not rise, on those facts, to the constitutional level. 393 U.S. at 351–352, 352–353, 353–356, 89 S.Ct. 528.

3. Shaw's court-martial was held in December 1948, and final action by higher authority occurred in 1949 and early 1950.

The Court of Military Appeals held that it had no jurisdiction over the case because it pre-dated enactment of the Uniform Code. See 357 F.2d at 952 & n. 2, 174 Ct.Cl. at 902–903 & n. 2.

4. Those Articles were in effect until May 31, 1951.

issue at all,[5] or that the particular presumption employed in Shaw's case was valid. The first proposition is plainly incorrect. *Tot* and *Romano* (as well as United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965)) expressly treated the validity of challenged statutory presumptions as involving the Federal Constitution. Very recently the Supreme Court upset another federal presumption on constitutional grounds, repeating and applying the *Tot-Gainey-Romano* standards. Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (May 19, 1969).

As for the specific presumption invoked by the Navy in this instance, the Government does not offer any reason for changing our earlier decision, and we know of none. In Leary v. United States, *supra,* the Supreme Court reformulated the rule in this way (at 36, 89 S.Ct. at 1548): "* * * * a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." (*See, also,* at 45, 52, 89 S.Ct., 1553, 1556.) For the reasons given in the original opinion (357 F.2d at 960–962, 174 Ct.Cl. at 915–919), we are satisfied that the Navy's presumption, as applied to Lieut. Shaw, fails this test with low marks.[6] The defendant's new motion to dismiss is denied.

### III.

The amount of recovery must now be considered.[7] We held Shaw "entitled to recover back pay and allowances, less appropriate offsets, from the date on which his pay was improperly with-

held to the date of judgment." 357 F.2d at 963, 174 Ct.Cl. at 920. The defendant now asks the court to rule that Shaw would have probably been released or retired for various reasons at an earlier date than indicated by our prior holding. In that opinion, however, we expressly observed that the defendant had not proved or offered to prove that if the then plaintiff had been freed of the court-martial charge (as he should have been) the Navy would have separated him, adding that the court had no reason to believe that he would have been separated. 357 F.2d at 963 n. 22, 174 Ct.Cl. at 920, n. 22. This then is the law of this case, and there is no good ground for recanvassing the point. Shaw was not separated or released by the Navy, except under the void court-martial charge.

The plaintiff, on the other hand, asks that the court, in effect, increase the amount of Shaw's pay and allowances by reason of promotions which it is thought he would have received through the ranks to a top grade of captain. The short answer to this contention is found in Boruski v. United States, 155 F.Supp. 320, 324, 140 Ct.Cl. 1, 7 (1957):

> We do not have the authority to advance him in rank, that is, to captain as of June 1, 1945; to major as of February 15, 1951; nor do we have the authority to pay him at the rate of the higher office, as he seeks in his petition, if he is not the legal holder of that rank. The only way plaintiff could have received his captaincy or majority was by Presidential appointment with the advice and consent of the Senate. Since there was no such action, plaintiff is not entitled to the pay of those higher ranks; however, he is entitled to the pay of the rank he held on July 23, 1945,

---

5. And therefore, under the Supreme Court's ruling in United States v. Augenblick and Juhl, *supra,* would not be cognizable by this court.

6. It must be remembered, in this connection, that the invalid presumption was not

adopted by Congress itself but was simply read by the Navy into the federal statutes.

7. In this part of the opinion, we are indebted to Trial Commissioner Day's opinion from which we borrow freely.

first lieutenant, for the entire period. That is the office to which he was appointed and never dismissed until the action of the Judge Advocate General on August 28, 1951.

There is no showing that Lieut. Shaw would automatically or surely or probably have been promoted (or that he was entitled as a matter of law to promotion), but only that his name would have come up, in ordinary course, for consideration for promotion at certain times. We have no means of knowing, or even of guessing, whether he would in fact have been elevated.

The claimant has proffered the testimony of an Air Force Reserve officer who had been convicted by a court-martial and sentenced to a penal term, with forfeiture of pay and allowances, and dismissed from the service. Pursuant to action by the Air Force Board for the Correction of Records, the dismissal was expunged and the individual was raised in rank from major to lieutenant colonel, and finally to colonel. If the Air Force Correction Board, in a proper case, can do this, perhaps the Navy Correction Board could accomplish a similar action. But that is not now before us since no application was made to, or considered by, that tribunal since our decision that the court-martial conviction was void.[8]

■■ An unusual feature is the matter of medical expenses which Shaw was required to pay after his dismissal from the service. Since these are the kind of expenses to which he would not have been put if he were on active naval duty, it seems only fair that this amount be prop-

erly includable in the court's judgment. These sums were adequately shown, in the situation here, by Shaw's testimony. Plaintiff seeks, in addition, the costs of Shaw's previous proceeding before the Navy Correction Board but that expense is not allowable. *See* Middleton v. United States, 175 Ct.Cl. 786 (1966).

Some dust has been raised by both sides about the quarters allowance to which Shaw was entitled. Both agree that the trial commissioner calculated this on the basis of Shaw's having been without dependents. Plaintiff now says that it should have been figured for the whole period on the basis of the allowance for an officer with a dependent, since Shaw was married. Defendant counters that he was divorced on June 1, 1951, and thereafter would only have received the allowance of an officer without dependents. We hold, however, that the commissioner's figures are correct on the basis of the parties' own stipulation which specifically said that "the computations set forth in the report of the General Accounting Office, dated November 28, 1966, may be accepted as the correct computations as indicated", with irrelevant changes. See finding 6. (The GAO report stated on its face that it was using a "quarters allowance for an officer without dependents".) The commissioner accepted the GAO figures, as he had every right to do under the stipulation. It is now far too late to reopen the record in this ancient case, at the plaintiff's behest, to correct the stipulation to which the claimant expressly agreed.[9] Though made aware of the seeming error, plaintiff has not even

8. Plaintiff also contends that there is no reason to believe that Shaw would have been retired at age 62 when he would have been eligible, but we think it highly probable, in all the circumstances, that relief from active duty would have occurred by that time.

9. The basis of the GAO's calculation of the quarters allowance became important when the defendant discovered, after Shaw's death, that he had apparently been divorced on June 1, 1951. The court

granted defendant's "motion for leave to file" the divorce decree (together with Shaw's will and the probable petition) but that motion did not request that the divorce decree to received in evidence or ask that the GAO computations be redone. Accordingly, the court's order allowing the motion did not itself effect any reopening of the record or modification of the stipulation. (Plaintiff's counsel emphasized, in his response to the motion, that it did not reopen the record.)

asked to be relieved of the stipulation or to have the record reopened.[10]

The plaintiff is therefore entitled to recover an amount equal to the pay and allowances of a lieutenant junior grade of the Naval Reserve on active duty until the end of the month in which Shaw attained age 62, and thereafter an amount equal to the pay of a retired officer of that rank, until May 11, 1967 (the date of his death), plus the medical, dental and eye-glass expenses which Shaw paid while improperly separated from the service—less his interim earnings. Plaintiff is also entitled to recover any military benefits properly accruing to Shaw's estate upon his death. In the findings we determine most of these components. To the extent left undetermined by this opinion, the exact amount of the recovery will be calculated under Rule 47(c).

---

10. If we were now to reopen the record for plaintiff's benefit, we would have to do the same for the defendant which insists that Shaw was divorced on June 1, 1951. See note 9, *supra*.

'We reject, likewise, the parties' other exceptions to the trial commissioner's findings.