**Dan D. DIAMOND**

v.

**The UNITED STATES.**

No. 294–61.

United States Court of Claims.

June 12, 1970.

Jeffrey M. Glosser, Washington, D. C., attorney of record, for plaintiff; N.

Alfred Pasternak, Washington, D. C., of counsel.

Katherine H. Johnson, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner Lloyd Fletcher with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a) [since September 1, 1969, Rule 134(h)]. The commissioner has done so in an opinion and report filed on August 22, 1969. Both parties filed exceptions to the commissioner's opinion, findings and recommended conclusion of law and the case has been submitted to the court on oral argument of counsel and the briefs of the parties.

 At the oral argument, defendant renewed its jurisdictional objection that limitations bars the entire claim, citing the recent Supreme Court decision in Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (decided March 2, 1970). That case, however, has little bearing on the limitations issue decided in Diamond v. United States, 344 F.2d 703, 170 Ct.Cl. 166 (1965). *Toussie* was a criminal case, and the statute of limitations there involved was a criminal statute of limitations. The Supreme Court's opinion makes clear that the considerations moving the Court to decide that that offense was not a continuing one were entwined with the criminal aspects of the matter, and its holding was limited to criminal statutes of limitations. See 397 U.S. 112 at 114–115, 122–123, 90 S.Ct. at 858. Those considerations have little relevance to the problems of limitations in civil cases. We see nothing in the *Toussie* opinion to cause us to change our earlier holding in this case that plaintiff's claim is a continuing one.

Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, with minor changes in the computation, it hereby adopts the same, together with the preceding paragraph, as the basis for its judgment in this case as hereinafter set forth. Therefore, plaintiff is entitled to recover the sum of $11,956.40 plus retired pay accruing to plaintiff subsequent to July 31, 1969. The exact amount of recovery will be determined pursuant to Rule 131(c).

## OPINION OF COMMISSIONER

### FLETCHER, Commissioner:

This protracted litigation has been before the court on two previous occasions. On April 16, 1965, the court held that plaintiff's claims for disability retirement pay were barred by the statute of limitations but held further that his alternate claim for active duty pay was a coninuing claim which required further proceedings before the commissioner to resolve the question of whether plaintiff had made a timely application for reenlistment as a master sergeant in the Army. See Diamond v. United States, 344 F.2d 703, 709–710, 170 Ct.Cl. 166, 177–178 (1965).

Thereafter, in an opinion handed down on July 15, 1966, the court held that, under the clear provisions of the Act of July 14, 1939, ch. 267, 53 Stat. 1001, plaintiff was entitled to reenlistment as a master sergeant without regard to any physical disqualification incurred in line of duty; that plaintiff had made a timely effort to reenlist under that statute on June 14, 1949; and that the rejection of that effort by defendant's recruiting personnel was unlawful. The court concluded that plaintiff must be considered a reenlisted master sergeant in the Army from June 14, 1949, and returned the case to the commissioner for further proceedings under Rule 47(c) to determine the amount of recovery, if any. Diamond v. United States, 176 Ct.Cl. 1103 (1966).

At plaintiff's request, the Rule 47(c) proceedings were temporarily suspended

so that he might return to the Army Board for Correction of Military Records and endeavor to obtain relief there administratively. Despite this court's decision of July 15, 1966, however, the Board refused to reopen the matter, and plaintiff returned to the court for a resumption of Rule 47(c) proceedings, which have now been concluded.

Plaintiff's principal contention is that under the facts and circumstances of this case, he is entitled, from July 1, 1955, to the date of judgment herein, to the basic pay and allowances of a master sergeant in the Army, less VA compensation, *but without reduction for civilian earnings*. Since, for the periods involved, his civilian earnings far exceeded the pay and allowances he would have received as a master sergeant, plaintiff obviously sees his victory of July 15, 1966, as a Pyrrhic one, indeed, if he is required to mitigate in keeping with the general rule.

While recognizing the well-established rule that civilian earnings must be "set off" in mitigation of the amount otherwise due plaintiff (see Motto v. United States, 175 Ct.Cl. 862, 360 F.2d 643 (1966), and cases cited therein), plaintiff asserts the rule should not apply here. His contention is that mitigation of damages is an equitable doctrine; that in seeking the equity of mitigation, defendant must do equity; and that by its continued refusal to treat plaintiff equitably in accordance with this court's decision, defendant has forfeited all right to "setoff."

■ Despite its superficial appeal, this argument has no merit. In cases where defendant has treated a serviceman much more shabbily and inequitably than here, the court has nonetheless required mitigation by "setoff" of his civilian earnings. See, for example, Egan v. United States, 158 F.Supp. 377, 141 Ct.Cl. 1 (1958), · which the court described as "an unusual case of mistaken identity and almost incredible neg-

ligence" by defendant in its illegal discharge of an officer in the Marine Corps. 158 F.Supp. 377, 141 Ct.Cl. at 3. Nonetheless, mitigation through deduction of civilian earnings was required. 158 F.Supp. 377, 141 Ct.Cl. at 27. See, also, Gearinger v. United States, 412 F.2d 862, 867, 188 Ct.Cl. 512, 523 (1969).

Accordingly, plaintiff's civilian earnings must be "set off" in mitigation of the amount otherwise due plaintiff, and since the proof shows that his "civilian earnings exceed the amount of entitlement, the latter is * * * obliterated." Conn v. United States, 407 F.2d 879, 880, 187 Ct.Cl. 319, 321 (1969).

If plaintiff is not entitled to basic pay and allowances, without offset for civilian compensation, he then alternatively contends that from July 16, 1966, to the date of judgment herein, his recovery should be measured by (a) disability retirement pay at the rate of 60 percent of the basic pay of a major with over 26 years' service, or (b) longevity retired pay at the rate of 60 percent of the basic pay of a master sergeant with such service, less VA compensation, but without other offset.[1]

■ Plaintiff's alternate contention (a) need not detain us. He frankly concedes the absence of any request for Secretarial determination of his unfitness for duty as a master sergeant on July 15, 1966, and agrees that normally this court will not "undertake to determine who is fit or unfit to serve in the military forces." Wales v. United States, 130 F.Supp. 900, 132 Ct.Cl. 765, 769 (1955). Therefore, as defendant contends, plaintiff's judicial claim for disability retirement as a master sergeant has not yet accrued. See Friedman v. United States, 310 F.2d 381, 396, 159 Ct.Cl. 1, 24 (1962), cert. denied *sub nom.* Lipp v. United States, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

With respect, however, to plaintiff's alternate contention (b), it is my opinion

1. These alternative claims were raised by plaintiff's amended petition filed herein pursuant to leave granted on November 8, 1967.

that he is entitled to recover longevity retired pay as computed in finding 14 below. In its opinion of July 15, 1966, the court said at 176 Ct.Cl. 1110:

Hence, it is clear that in the present case the court will not lend its support to the Army's rejection of plaintiff's reenlistment attempt in the face of his clear entitlement thereto. Rather, it will regard that as done which ought to have been done and will treat plaintiff as having been a reenlisted master sergeant in the Army from June 14, 1949.

In its brief defendant notes its acceptance of the court's opinion that plaintiff can be considered as having remained on active duty on June 14, 1949, under an indefinite term of enlistment.[2] Defendant goes on to say, however, that it can find no decision wherein, under the fiction of continuing active duty, a former serviceman has been credited by the court with active duty credits for retirement purposes.

However, in a recent decision, the court has done just that. Gearinger v. United States, *supra*. There, the court was called upon to determine, *inter alia*, the amount of recovery due the estate of a deceased Naval officer. In a prior decision the court had held that he had been illegally discharged from the Navy as a result of a court-martial conviction which was vitiated by a significant constitutional defect, and returned the case to the trial commissioner for computation of the amount due from defendant. Shaw v. United States, 357 F.2d 949, 174 Ct.Cl. 899 (1966). The court concluded not only that he was entitled to

recover active duty pay and allowances to the date of his eligibility for retirement (less his civilian earnings, however) but also was entitled to recover retired pay from the date he would normally have retired to the date of his death. See *Gearinger, supra,* 412 F.2d 866 (ftn. 8), 867, 188 Ct.Cl. 518 (ftn. 8), 523.

While the *Shaw* litigation involved an illegal discharge, the principles described above would seem to apply equally to a case where, as here, the serviceman's application for reenlistment has been illegally rejected. By its very nature, retirement pay should not be subject to the mitigation rule previously discussed.[3] Accordingly, plaintiff is entitled to recover retired pay as computed in finding 14, *infra*.

### FINDINGS OF FACT

1. On July 27, 1961, plaintiff filed suit in this court to recover, *inter alia*, the active duty pay and allowances of a master sergeant, Regular Army, with his length of service and status as to dependents, for the period commencing June 14, 1949, and extending to such time as judgment might be entered herein. Trial was held in Denver, Colorado, in October 1963. Thereafter, defendant filed a motion to dismiss the petition as barred by limitations. In an opinion rendered April 16, 1965, defendant's motion to dismiss the petition was granted in part as to plaintiff's claims for disability pay and denied in part as to his claim for active duty pay. Diamond v. United States, 170 Ct.Cl. 166, 344 F. 2d 703 (1965).

---

2. Defendant suggests, however, that plaintiff's enlistment would have terminated on March 31, 1959, when his application for transfer to the Air Force Reserve Retired List was approved. This, however, seems only to indicate continuing confusion as to which branch of military service was involved in this entire matter. It seems to have little bearing on the question of what plaintiff would have done had he been reenlisted as a master sergeant in the Army, an action to which he was clearly entitled.

3. In Merson v. United States, the court, on the plaintiff's motion, expressly, and after deliberation, amended its disposition of the case to provide that "civilian compensation" was not to be offset against retirement pay. See Merson v. United States, 401 F.2d 184, 192, 185 Ct.Cl. 48, 63 (1968). This is a direct precedent on the point. In *Gearinger, supra*, offset for civilian earnings was allowed against retirement pay, but that plaintiff did not raise this issue and the question was therefore not considered or decided by the court. [Footnote by the court.]

In its later opinion on July 15, 1966, the court held, with respect to so much of plaintiff's said claim for active duty pay as had accrued within the six years next preceding July 27, 1961, that plaintiff was entitled to recover with the amount of recovery, if any, to be determined pursuant to Rule 47(c) [now Rule 131(c)]. Diamond v. United States, 176 Ct.Cl. 1103, 1105 (1966). In the interest of brevity and to avoid needless repetition, the court's Opinion, Findings of Fact, and Conclusion of Law are incorporated herein by reference.

2. By orders of the court dated October 19, 1966, and January 31, 1967, plaintiff's motions for suspension of proceedings were granted in order to enable plaintiff to request reconsideration of his application for correction of his military records by the Army Board for Correction of Military Records. Proceedings were so suspended to July 20, 1967.

By letters dated October 21, 1966, and February 3, 1967, plaintiff asked the Board to give further consideration to his said application in light of the Opinion, Findings of Fact, and Conclusion of Law announced by this court on July 15, 1966. The Board was specifically apprised of the finding of the court that, on June 14, 1949, plaintiff had applied for reenlistment in the Regular Army for an indefinite period in his former grade of Regular Army master sergeant; of the court's holding that plaintiff was entitled to such reenlistment; and of the further holding that, through "clear error," plaintiff had been "rejected for such reenlistment" in disregard of statute and Army regulations. The Board was also apprised of the court's opinion that the Board had "refused to correct the error [which had occurred at Denver, Colorado, on June 14, 1949] on the basis of an evasive finding that it was unable to determine whether plaintiff had been rejected for reenlistment by the Army or by the Air Force." Plaintiff also stated to the Board that the court's Opinion, Findings of Fact, and Conclusion of Law

rested on "newly discovered relevant evidence not previously considered by the Board" in that the record before the court had included the testimony of numerous knowledgeable witnesses present in Denver on June 14, 1949; and that the transcript of testimony at the Denver hearing would be made available to the Board upon request. Plaintiff suggested, in view of his present age and circumstances, his physical disqualification even in 1949, his prolonged absence from military life, and the fact that, had the Army not "aborted the normal course of events" in 1949, he would be eligible for retirement at his own request, that the Board correct his record to reflect his reenlistment in the Regular Army in the grade of master sergeant, for an indefinite period, effective June 14, 1949; that to and including the date the Secretary might act on plaintiff's request, he had been "a reenlisted master sergeant in the Army" and that effective upon the date the Secretary might act on plaintiff's request, he was, on his own application therefor, retired after more than 24 years' active Federal service, in accordance with law.

On February 8, 1967, a panel of the Army Board for Correction of Military Records reconsidered "the Army and Air Force records of Diamond, together with supporting evidence submitted." The decision of the panel was that "there had not been introduced into the case any compelling evidence sufficient to warrant a recommendation to the Secretary of the Army that the case be reopened," and that plaintiff's "request for reconsideration was denied."

By letter dated February 17, 1967, the Executive Secretary of the Army Board advised plaintiff of the Board's adverse action.

By letter dated February 22, 1967, from Congressman Byron G. Rogers to the Secretary of the Army, the Secretary's personal consideration of plaintiff's case was requested. Mr. Rogers' letter stated, in substance, that despite the deprivation of statutory rights recognized by the court, the Army Board

for Correction of Military Records still refused plaintiff corrective action. By letter dated April 5, 1967, to Mr. Rogers, Mr. Francis K. Plant, Special Assistant, Office of the Under Secretary, Department of the Army, responded that "With all due respect for the court's opinion in the matter, it has been determined that the Board's judgment was proper and should be upheld."

Thereupon, plaintiff returned to this court, and Rule 47(c) [now Rule 131(c)] proceedings were begun. Plaintiff then requested leave to file an amended petition which claimed, in essence, that if his entitlement to basic pay and allowances must be mitigated by his civilian earnings, then in the alternative his recovery for the period July 16, 1966 to date of judgment should be measured by (a) disability retirement pay at the rate of 60 percent of the basic pay of a major with over 26 years' service, or by (b) retired pay at the rate of 60 percent of the basic pay of a master sergeant with such service. Over defendant's objection, leave to file the amended petition was granted by the commissioner, and on January 12, 1968, the court denied defendant's request for review of the commissioner's order.

3. On June 14, 1949, plaintiff had completed seven years and 25 days of active service in components of the Army and Air Force. Had he been permitted to reenlist June 14, 1949, for an indefinite period as a master sergeant and had he not thereafter been discharged, resigned, or otherwise withdrawn from the Army, he would have completed 20 years of active service on May 19, 1962, and over 26 years' service on June 8, 1965.

4. Had plaintiff served on active duty in the Army as a master sergeant from and after July 1, 1955, to the date of July 31, 1969, he would have received basic pay and allowances as follows:

| Period | Basic pay | Separate rations | BAQ * | CMAS * | Total |
|---|---|---|---|---|---|
| 1955 (½ year) | $1,731.60 | $202.40 | $462.60 | $32.40 | $2,429.00 |
| 1956 | 3,463.20 | 377.20 | 925.20 | 64.80 | 4,830,40 |
| 1957 | 3,568.24 | 365.00 | 925.20 | 64.80 | 4,923.24 |
| 1958 | 4,041.00 | 401.50 | 925.20 | 64.80 | 5,432.50 |
| 1959 | 4,367.33 | 419.75 | 925.20 | 64.80 | 5,777.08 |
| 1960 | 4,440.00 | 402.60 | 925.20 | 64.80 | 5,832.60 |
| 1961 | 4,507.34 | 401.50 | 925.20 | 64.80 | 5,898.84 |
| 1962 | 4,560.00 | 390.55 | 925.20 | 64.80 | 5,940.55 |
| 1963 | 4,770.00 | 376.78 | 1,440.00 | 64.80 | 6,651.58 |
| 1964 | 5,445.60 | 383.25 | 1,440.00 | 64.80 | 7,333.65 |
| 1965 | 6,055.80 | 397.85 | 1,440.00 | 64.80 | 7,958.45 |
| 1966 | 6,935.40 | 420.75 | 1,440.00 | 72.00 | 8,868.15 |
| 1967 | 7,144.20 | 474.50 | 1,440.00 | 90.00 | 9,148.70 |
| 1968 | 7,698.60 | 481.80 | 1,440.00 | 86.40 | 9,706.80 |
| 1969 (Jan. 1 to July 31) | 4,641.00 | 277.20 | 840.00 | 50.40 | 5,808.60 |
| Total | | | | | 96,540.14 |

\* Basic Allowance for Quarters.
\*\* Clothing Maintenance Allowances Standard.

The monthly basic pay and allowances from August 1, 1969, to the date the court may enter judgment herein are:

| | |
|---|---|
| Basic pay | $663.00 |
| Separate rations | 39.60 |
| BAQ | 120.00 |
| CMAS | 7.20 |
| Total | 829.80 |

The foregoing must be qualified by the fact that an increase in monthly basic pay, effective July 1, 1969, was provided by Executive Order No. 11475, June 19, 1969, 34 F.R. 9609.

5. Plaintiff has received disability compensation from the Veterans Administration (VA) as follows:

| | |
|---|---|
| 1955 (½ year) | $198.00 |
| 1956 | 396.00 |
| 1957 | 405.00 |
| 1958 | 432.00 |
| 1959 | 432.00 |
| 1960 | 432.00 |
| 1961 | 432.00 |
| 1962 | 444.00 |
| 1963 | 456.00 |
| 1964 | 456.00 |
| 1965 | 460.00 |
| 1966 | 480.00 |
| 1967 | 480.00 |
| 1968 | 480.00 |
| Total | 5,983.00 |

Effective January 1, 1969, pursuant to Public Law 90–493, 82 Stat. 808, monthly compensation for a 20 percent disability rating was increased to $43.00 per month.

From January 1, 1969, to July 31, 1969, plaintiff has received or will receive from the Veterans Administration a total of $301.00. His monthly VA compensation thereafter to date of judgment will be $43.00.

6. Plaintiff has had civilian earnings as follows:

| | |
|---|---|
| July 1, 1955, to December 31, 1955 | $2,797.24 |
| 1956 | 6,642.89 |
| 1957 | 11,539.69 |
| 1958 | 4,348.95 |
| 1959 | 5,245.61 |
| 1960 | 5,897.15 |
| 1961 | 4,974.62 |
| 1962 | 9,276.40 |
| 1963 | 11,635.86 |
| 1964 | 16,324.42 |
| 1965 | 12,613.40 |
| 1966 | 12,000.00 |
| 1967 | 12,000.00 (at least) |
| 1968 | 12,000.00 (at least) |
| Total | 127,296.23 |

It is reasonable to infer from the foregoing that plaintiff's civilian earnings for 1969 will be at least $12,000.00.

7. The highest temporary grade in which plaintiff served satisfactorily on active duty was in the grade of major (O–4).

8. The basic pay of a master sergeant with over 26 years' service on July 31, 1966, was $587.10 per month. The basic pay of a major with over 26 years' service on July 16, 1966, was $829.80 per month. Act of July 13, 1966, 80 Stat. 275, 277.

Retired pay computed at the rate of 60 percent of the basic pay of a major with over 26 years' service, as of July 16, 1966, amounts to $497.88 per month; retired pay computed at the rate of 60 percent of the basic pay of a master sergeant with over 26 years' service, as of August 1, 1966, amounts to $352.26 per month.

By the Uniformed Services Pay Act of 1965, Public Law 89–132, 79 Stat. 545, 547, Congress tied military retired pay to a Consumers' Price Index (CPI) formula, by providing an automatic increase in retired pay each time the base CPI (110.0 in August 1965) increased 3 percent or more and remained that high for three successive months, with the increase to become effective on the first day of the third month thereafter; pursuant to this formula, retired pay increased 3.7 percent effective December 1, 1966; an additional 3.9 percent effective April 1, 1968; and an additional 4.0 percent effective February 1, 1969.

9. During his active service from March 13, 1942, to February 4, 1947, plaintiff incurred, in line of duty, chronic peptic ulcer of the duodenum and chronic keratitis of the right eye. His chronic ulcer condition has persisted since that time.

On November 10, 1950, the VA Center, Denver, Colorado, granted plaintiff a 40 percent disability rating, effective June 15, 1950 (the date of claim), for moderately severe duodenal ulcer. Effective December 1, 1953, plaintiff's disability rating for duodenal ulcer was reduced from 40 percent to 20 percent. The diagnosis was confirmed by X-ray. The record contains physicians' statements, VA documents, and other evidence establishing that, to and after July 15, 1966, plaintiff has continued to suffer from active duodenal ulcer.

AR 40–504, 28 June 1955, "Standards of Fitness and Unfitness for Retention on Active Duty," provides in substance that duodenal ulcer "may" render an individual unfit for military duty; it provides further that where "symptoms persist to at least a moderate degree following adequate medical treatment, or where there is a history of frequent recurrences," an individual should generally "be considered as unfit for service.".

AR 40–501, December 1960, "Standards of Medical Fitness," superseded AR 40–504, 28 June 1955 (and C–1, 6 February 1959). AR 40–501 provides, in substance, that an individual will normally be considered unfit for military service by reason of physical disability for: "Ulcer, * * * duodenal * * *. Repeated hospitalization or 'sick in quarters' because of frequent recurrence of symptoms (pain, vomiting or bleeding) in spite of good medical management, and supported by laboratory and X-ray evidence of activity."

Under Code 7305, VA Schedule for Rating Disabilities, 1957 Edition, as amended, effective from November 1, 1962, to and after July 15, 1966, duodenal ulcer, "Moderate; recurring episodes of severe symptoms two or three times a year averaging 10 days in duration; or with continuous moderate manifestations," is rated as 20 percent disabling.

Plaintiff concedes the absence of any request by him for a Secretarial determination as to whether or not he was physically unfit for active duty on July 15, 1966.

10. On August 11, 1958, plaintiff submitted to the Air Force his application for transfer to the USAF Retired Reserve by reason of medical disqualification. On March 17, 1959, he was re-

lieved from assignment Headquarters Continental Air Command (ISLRS) and assigned to the Retired Reserve Section and placed on the USAF Reserve Retired List effective March 31, 1959.

11. Defendant's records reflect that, throughout the period from and after 1949, plaintiff has been married to Thimitrula D. Diamond.

## ULTIMATE FINDINGS OF FACT

12. For the years involved, plaintiff's civilian earnings totaled at least $127,296.23, and he received disability compensation payments from the VA amounting to $5,983. His basic pay and allowances as a master sergeant for the same period would have totaled $96,540.14. Plaintiff's civilian earnings must be applied in mitigation of the amount otherwise due plaintiff, and since those earnings exceed said amount, nothing is due plaintiff for basic pay and allowances.

13. There has been no Secretarial determination, nor has plaintiff requested such determination, as to whether or not he was physically unfit for active duty on July 15, 1966.

14. For the period commencing August 1, 1966, plaintiff is entitled to the retired pay of a master sergeant with over 26 years' service computed as set forth in finding 8, *supra*. The dollar amounts of his retirement pay from August 1, 1966, are as follows: August 1, 1966, to November 30, 1966, $1,249.04; December 1, 1966, to March 31, 1968, $5,204.64; April 1, 1968, to January 31, 1969, $3,392.40; effective February 1, 1969, $351.72 per month. The total amount of retirement pay due plaintiff as of July 31, 1969, is $11,956.40. The net amount due plaintiff, therefore, as of July 31, 1969, is $11,956.40.

## RECOMMENDED CONCLUSION OF LAW

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover of and from the United States, the sum of $11,956.40 plus retired pay accruing to plaintiff subsequent to July 31, 1969. The exact amount of recovery will be determined under Rule 131(c).