James R. MATIAS, Plaintiff–Appellant,

v.

The UNITED STATES,
Defendant–Appellee.

No. 90–5086.

United States Court of Appeals,
Federal Circuit.

Dec. 27, 1990.

Thomas R. Matias, Albany, N.Y., submitted for plaintiff-appellant.

James M. Kinsella, of the Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director. Of counsel was Captain Diana Moore, of the Office of the Judge Advocate General, U.S. Army.

Before NEWMAN, LOURIE and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

James R. Matias appeals the judgment of the United States Claims Court dismissing his complaint against the United States. *Matias v. United States*, 19 Cl.Ct. 635 (1990). We affirm.

## I. BACKGROUND

A former U.S. Army enlisted man, Matias was tried by a general court-martial on April 19 and 20, 1984. He was convicted of four counts in violation of Articles 81 and 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 934 (1988): (1) conspiracy to distribute marijuana; (2) distribution of marijuana; (3) conspiracy to possess and distribute cocaine; and (4) possession of cocaine with the intent to distribute. He was acquitted of one count charging him with wrongfully using marijuana.

The court-martial panel sentenced Matias to a bad conduct discharge, total forfeiture of pay, reduction to the lowest enlisted grade, and two years of confinement at hard labor. The convening authority approved the findings and the sentence following a staff judge advocate review as provided in 10 U.S.C. §§ 860–861 (1988). Thereafter, the record was referred to the Army Court of Military Review for further review in accordance with 10 U.S.C. § 866 (1988), and that court also affirmed the findings and the sentence. Matias then sought review by the United States Court of Military Appeals (CMA), which granted Matias' petition pursuant to 10 U.S.C. § 867(b)(3) (1988), and subsequently upheld the conviction and the sentence imposed. Matias sought review of his conviction by petitioning for a writ of *certiorari* to the Supreme Court of the United States under 28 U.S.C. § 1259(3) (1988), which was denied. *United States v. Matias*, 21 M.J. 1002 (A.C.M.R.1986); *aff'd*, 25 M.J. 356 (C.M.A.1987); *cert. denied*, 485 U.S. 968, 108 S.Ct. 1242, 99 L.Ed.2d 441 (1988).

Finally, Matias filed a complaint in the Claims Court under the Tucker Act, 28 U.S.C. § 1491 (1988), seeking correction of his military records by voiding his court-martial and, therefore, back pay for wrongful discharge. Matias' contention is that since his conviction involved violation of his constitutional rights, he was wrongfully discharged and is entitled to back pay.

In response to Matias' complaint, the Government filed a motion to dismiss for lack of subject matter jurisdiction. Matias contended in a cross-motion for summary judgment that jurisdiction was proper, and moreover, that significant constitutional violations in the military proceedings warranted judgment as a matter of law in his favor. The Government then filed a cross-motion for summary judgment on the merits reiterating its jurisdictional challenge but arguing that there was no factual basis for Matias' allegation that his constitutional rights were violated during the court-martial proceedings.

The Claims Court denied the Government's motion to dismiss for lack of jurisdiction, denied Matias' cross-motion for summary judgment, granted the Government's cross-motion for summary judgment on the merits because Matias had failed to support his allegations of constitutional violations, and dismissed the complaint.

## II. JURISDICTION IN THE CLAIMS COURT

The Government asserts that the Claims Court lacked subject matter jurisdiction to hear a collateral attack on Matias' court-martial conviction. We must

therefore first address the Government's jurisdictional challenge.

Matias seeks correction of his military records and back pay. Both of these issues fall squarely within the Claims Court's Tucker Act jurisdiction. We have long honored the rule that "judgments by courts-martial, although not subject to direct review by federal civil courts, may nevertheless be subject to narrow collateral attack in such courts on constitutional grounds" when traditional Tucker Act jurisdiction is present. *Bowling v. United States*, 713 F.2d 1558, 1560 (Fed.Cir.1983); *see also Gearinger v. United States*, 412 F.2d 862, 864, 188 Ct.Cl. 512 (1969) (recognizing jurisdiction in the Court of Claims to hear collateral attacks on court-martial convictions).

However, the Government now advances four arguments to support its contention that the Claims Court no longer has jurisdiction to hear collateral attacks on court-martial convictions.

■ First, the Government argues that by enacting 28 U.S.C. § 1491(a)(2) (1988) in 1972, Congress intended to rescind the authority of the Court of Claims, now the Claims Court, to review court-martial convictions for constitutional irregularities. This section grants authority in the Claims Court to provide additional relief in actions against the Government by issuing "orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." The Government does not, and could not, contend that the plain language of that section deprives the Claims Court of jurisdiction to hear collateral attacks on court-martial convictions. Rather, the Government relies on a statement in the Senate Report accompanying the statute that it was "not intended to have any effect on the finality provisions of 10 U.S.C. 876, which sets forth the conclusive nature of the proceedings, findings, and sentences of courts-martial." S.Rep. No. 1066, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Admin.News 3116, 3118. In other words, the Government contends that Congress excepted records relating to courts-martial from the authority to issue "orders directing … correction of applicable records." However, the legislative history presents no clear intent contrary to the precise holding in *Gearinger, supra,* permitting narrow collateral attack of final military tribunal proceedings. The simplest answer to this aspect of the jurisdictional challenge is that we are bound by *Bowling*, which recognized a limited jurisdiction in the Claims Court to hear collateral attack on court-martial convictions "notwithstanding the fact that Article 76 of the UCMJ, 10 U.S.C. § 876, expressly states that all dismissals and discharges under sentences by courts-martial following approval, review, or affirmation are final and conclusive." *Bowling*, 713 F.2d at 1560–61. We have considered the Government's interpretation but decline to read the statute or its legislative history so expansively. There is nothing in the plain language of the statute that compels this Court to overturn judicial precedent, and the cited legislative history surely does not direct that result. We read the cited statutory section as providing jurisdiction in the Claims Court for the relief that Matias seeks.

■ Second, the Government contends that a 1983 amendment to the UCMJ precludes collateral attack of court-martial convictions by persons seeking back pay in the Claims Court. Military Justice Act of 1983, Pub.L. No. 98–209, 97 Stat. 1393, 1406. The amended statute permits persons convicted by court-martial to petition for writ of *certiorari* in the Supreme Court after final review by the CMA. 10 U.S.C. § 867(h)(1) (1988). The Government argues that provision of review by *certiorari* to the Supreme Court eliminated the previously available opportunity for collateral attack of court-martial convictions in the Claims Court.

This argument also must fail. The 1983 amendment did not state that review of court-martial convictions by collateral attack in the Claims Court must end, although, in light of our precedent, such a limitation might easily have been added. The Government's position is that Congress

meant to avoid duplicative collateral review in the Claims Court by providing an opportunity for direct review in the Supreme Court. That view overlooks the distinction between the discretionary appellate review by the Supreme Court by way of *certiorari* and the mandatory collateral review afforded in the Claims Court. Moreover, the legislative history reveals that Congress intended to grant the Government an additional remedy rather than deprive Matias of his. The Senate Report states:

> [T]here is no present authority for either party to seek direct Supreme Court review of decisions by the Court for Military Appeals. The accused may attempt to mount a collateral attack at his own expense, a difficult and costly endeavor, but the government has absolutely no judicial recourse from adverse decisions. There is no other major federal judicial body whose decisions are similarly insulated from direct Supreme Court review. The bill authorizes the parties to petition the Supreme Court to review decisions of the Court of Military Appeals through discretionary writs of certiorari.
>
> \* \* \* \* \* \*
>
> Under the current state of affairs, this means that the accused, but not the government, may initiate actions involving military justice issues which eventually might gain the Supreme Court's review. It is the committee's view that is an unsatisfactory way to manage a system of judicial review.

S.Rep. No. 53, 98th Cong., 1st Sess. 8–9 (1983).

Furthermore, testifying during hearings on the bill, Chief Judge Everett of the United States Court of Military Appeals stated that no change in the availability of collateral attack in the civil courts would occur:

> It has been suggested that the availability of certiorari may lessen collateral attacks on courts-martial. We have not seen recent figures concerning the current level of collateral attacks; and so we cannot evaluate the magnitude of this problem. *However, denial of a petition for certiorari does not preclude collateral attacks that otherwise could be undertaken successfully.* Undoubtedly the Committee is familiar with cases where, after exhausting his remedies on direct appeal by petitioning the Supreme Court for certiorari, a convicted defendant has then undertaken collateral attack on his conviction in a Federal District Court.

*The Military Justice Act of 1982: Hearings on S. 2521 Before the Subcomm. on Manpower and Personnel of the Senate Comm. on Armed Services*, 97th Cong., 2d Sess. 136 (1982) (hereinafter *Hearings*) (emphasis added).

In response to a question on whether the accused would have a right of collateral attack if Supreme Court review could be sought, Chief Judge Everett testified:

> We do not believe that the right of an accused to undertake collateral attack should be cut off simply because certiorari to the Supreme Court is authorized. Indeed, to attempt such a curtailment might be unconstitutional. . . .

Hearings at 169–70.

Furthermore, only those plaintiffs whose cases are reviewed by the CMA can seek review by petition to the Supreme Court. 28 U.S.C. § 1259 (1988). The Supreme Court cannot review an action of the CMA refusing a petition for review. 10 U.S.C. § 867(h)(1)(1988). Therefore, the CMA holds the key that allows access to the Supreme Court. This controlled access, as well as its mitigating effect on the caseload of the Supreme Court, was discussed throughout the hearings. *Hearings* at 21, 39–40, 84, 136, 170. For instance, statistics quoted during the hearings revealed that in 1981 only seven percent of the cases filed with the CMA would have qualified for review by the Supreme Court. *Hearings* at 84. Under the Government's jurisdictional argument, access to the Claims Court would be denied to individuals to whom review by writ of *certiorari* is unavailable. We conclude that the 1983 amendment to the UCMJ providing for direct Supreme Court review by *certiorari* of court-martial convictions did not divest the Claims Court of its jurisdiction to hear nar-

row collateral attacks on constitutional grounds.

■ Third, the Government cites a recent opinion of the CMA stating that "Congress never intended that [the CMA] sit by helplessly while courts-martial are misused in disregard of an accused service member's rights under the Constitution or the Uniform Code." *Unger v. Ziemniak,* 27 M.J. 349, 355 (C.M.A.1989). The Government thus rests its third argument on the CMA's recent pronouncement of its general supervisory power over all court-martial proceedings. We do not quibble with that proposition, but it in no way alters the jurisdiction of the Claims Court or our jurisdiction to review the decisions of the Claims Court in collateral attacks of courts-martial. The third basis for the Government's jurisdictional challenge must also be rejected.

Fourth, the Government argues that collateral attacks of court-martial convictions in the Claims Court are inconsistent with *Soloria v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1986). In *Soloria,* the Supreme Court considered whether trial court military jurisdiction under the UCMJ depends on the service connection of the offense charged. *Id.* at 436, 107 S.Ct. at 2925. Nothing in *Soloria* suggests that review of military tribunal proceedings by a federal civil court, whether in the Supreme Court by way of writ of *certiorari* or in the Claims Court and here in connection with Tucker Act claims, must cease.

Finally, the Government asserts that its individual arguments when taken together are "developments" that undermine the rationale for collateral attack on court-martial convictions in the Claims Court, and require us to close the doors of the Claims Court to the likes of Matias. We have duly noted that none of these four arguments persuades us to end the longstanding jurisdiction of the Claims Court to hear these cases. Lumping the separate arguments together does not enhance their persuasiveness, nor does it create a comprehensive "precisely drawn, detailed statutory scheme," effecting a revocation of collat-

eral review through a Tucker Act action, by analogy with *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). In *Fausto,* the Supreme Court considered whether the Civil Service Reform Act (CSRA), which in a single enactment " 'comprehensively overhauled the civil service system,' " was designed to replace a haphazard system that included Claims Court review traditionally available under the Tucker Act. *Id.* at 443, 108 S.Ct. at 671 (citation omitted). The Supreme Court concluded that "the comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review ... combine to establish a congressional judgment that those employees should not be able to demand judicial review." *Id.* at 448, 108 S.Ct. at 673.

The arguments advanced here by the Government fail to demonstrate a comprehensive statutory revision demonstrating Congressional intent, such as that found in *Fausto,* to eliminate the jurisdiction of the Claims Court to hear this case. Moreover, the Supreme Court refused to eliminate that jurisdiction even when presented with a Congressional enactment much more directly connected to the jurisdictional subject than the enactments urged upon us. In *Schlesinger v. Councilman,* 420 U.S. 738, 745, 95 S.Ct. 1300, 1306, 43 L.Ed.2d 591 (1975), the Supreme Court concluded that Article 76 of the UCMJ, which provides for the finality of court-martial convictions, had not eliminated the jurisdiction of the Court of Claims to hear collateral attacks on court-martial convictions. Furthermore, the Supreme Court in *Schlesinger, id.* at 748, 95 S.Ct. at 1308, emphasized the long history of such actions, beginning with its recognition of that jurisdiction in *Runkle v. United States,* 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887).

We thus decline the invitation to read a *Fausto* effect into this case, and we conclude that the Claims Court properly exercised its jurisdiction to hear Matias' collateral attack on his court-martial.

### III. MERITS OF MATIAS' APPEAL

The Claims Court properly stated that "the narrow window of collateral attack review given to this Court remains open, but only for those issues that address the fundamental fairness in military proceedings and the constitutional guarantees of due process." 19 Cl.Ct. at 641. In order to prevail below, Matias was required to "demonstrate convincingly that in the court-martial proceedings there has been such a deprivation of fundamental fairness as to impair due process." *Bowling v. United States*, 713 F.2d 1558, 1561 (Fed. Cir.1983); *see also United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 534, 21 L.Ed.2d 537 (1969) ("a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten ... that the proceeding is more a spectacle ... or trial by ordeal ... than a disciplined contest").

Matias raises five alleged errors that he claims constitute significant constitutional violations in the military proceedings. He argues that the 156 day lapse between his arrest and trial constituted a denial of a speedy trial; that sending the jury into deliberation at 6:00 p.m. on Good Friday constituted a denial of due process; that no credible evidence of guilt sustains his conviction and therefore he was denied due process; that the fundamental fairness of the military proceedings were tainted by the court's allegedly erroneous factual finding that Matias admitted to having arranged the sale of cocaine; and that a number of breaks in the chain of custody occurred and undercut the fundamental fairness of his trial. The Claims Court fully treated each alleged error in its detailed and well-reasoned published opinion. 19 Cl.Ct. at 642–50. We see no reason to repeat that treatment here.

We review the decision of the Claims Court for errors of law and clearly erroneous findings of fact. *Milmark Servs., Inc. v. United States*, 731 F.2d 855, 857 (Fed.Cir.1984). However, questions of fact resolved by military courts are not subject to collateral attack. *See, e.g., Flute v. United States*, 535 F.2d 624, 626, 210 Ct.Cl. 34 (1976). The Claims Court's limited function was to determine whether the military tribunal gave fair consideration to each of Matias' claims. *See Burns v. Wilson*, 346 U.S. 137, 144, 73 S.Ct. 1045, 1049, 97 L.Ed. 1508 (1953). The Claims Court concluded that the military gave full and fair consideration to each of Matias' claims in proceedings that satisfied the requirements of due process of law. Finding no error by the court below, we affirm.

AFFIRMED.