NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**JEROME RANDOLPH,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2017-1477

———————————

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00672-TCW, Judge Thomas C. Wheeler.

———————————

Decided: June 13, 2017

———————————

JEROME RANDOLPH, Baton Rouge, LA, pro se.

ALEXIS J. ECHOLS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., DOUGLAS K. MICKLE.

———————————

Before PROST, *Chief Judge*, CHEN, and STOLL, *Circuit Judges*.

PER CURIAM.

The United States Department of the Navy (Navy) dishonorably discharged Jerome Randolph, the pro se appellant, after a court-martial convicted him for sexual assault and falsifying a statement about that assault. After this discharge, Mr. Randolph repeatedly sought expungement of his court-martial conviction, as well as an award of back pay and an upgraded discharge status, before the Board for Correction of Naval Records (Board). The Board denied him any relief. He ultimately filed suit against the United States (government) in the United States Court of Federal Claims (Claims Court) seeking the same relief he sought from the Board, as well as claiming relief from defamation. The Claims Court concluded that, in light of his court-martial conviction, the Board reasonably refused to award him back pay and upgrade his discharge status. The Claims Court also held that it had no jurisdiction to expunge his court-martial conviction or to proceed with his defamation claim. Even after we broadly construe Mr. Randolph's arguments on appeal, we *affirm*.

BACKGROUND

Mr. Randolph was a commissioned officer in the Navy from June 2000 until his dismissal in May 2011. In 2009, a Seaman Recruit (Recruit) alleged that Mr. Randolph sexually assaulted her. The Navy investigated the allegation. During the investigation, Mr. Randolph denied ever having sexual contact with the Recruit, but a forensic examiner found Mr. Randolph's semen on the Recruit's clothing and body. Mr. Randolph was eventually charged and brought before a court-martial for violating three articles of the Uniform Code of Military Justice: Article 107 (making a false statement); Article 120 (rape and carnal knowledge); and Article 133 (conduct unbecoming

an officer and a gentleman). *See* 10 U.S.C. §§ 907, 920, 933 (2012).

In September 2009, Mr. Randolph pleaded guilty to the charges for violating Articles 107 and 133. The court-martial found, and Mr. Randolph admitted, that he sexually assaulted the Recruit and subsequently made a false statement about it. The court-martial convicted him of violating Articles 107 and 133, sentenced him to confinement for twenty-four months, and dismissed him from the Navy. The charge for violating Article 120 was dropped.

In July 2010, the United States Navy-Marine Corps Court of Criminal Appeals affirmed the court-martial's findings and sentence. Mr. Randolph then petitioned for review with the United States Court of Appeals for the Armed Forces, which denied his petition in October 2010. The Navy dishonorably discharged him in May 2011.

Mr. Randolph petitioned the Board in December 2011, seeking to have the Board expunge his court-martial conviction from his military record, upgrade his discharge status from dishonorable to honorable, and award him back pay with promotions. He argued that he was entitled to such relief because the sexual assault allegation was false and the Article 120 violation was dropped. The Board administratively closed his case until Mr. Randolph could provide the Board with a record of his court-martial conviction. Mr. Randolph eventually provided the missing record, and the Board reopened the case in July 2012.

In January 2013, after considering the Navy's investigation into the sexual assault allegation, the court-martial trial record, which included Mr. Randolph's admissions that supported his guilty pleas, Mr. Randolph's naval record, and any applicable laws, the Board denied Mr. Randolph's request for relief. The Board explained that there was no evidence that warranted awarding him back pay or upgrading his discharge status.

It also explained that it construed Mr. Randolph's petition as one seeking clemency because it had no authority to expunge a general-court martial conviction.

Mr. Randolph sought further review by the Board. In May 2013, he asked his then-Senator, the Honorable Mary L. Landrieu, to request on his behalf that the Board reconsider his petition. She obliged. And the Board responded in August 2013, but the result was no different, despite some new evidence that was brought to its attention. Mr. Randolph petitioned the Board once again in August 2014, but the Board denied his petition as it had already considered all of the evidence. The Board advised him that if he disagreed, he should appeal to an appropriate federal court.

While awaiting a response from the Board to his August 2014 petition, Mr. Randolph wrote a letter to the then-Secretary of the Department of Defense (Secretary), the Honorable Chuck Hagel, in mid-September 2014, apprising the Secretary of his efforts to obtain an honorable discharge. The Secretary referred the letter to the Board, and the Board responded in October 2014 that it stood by its previous decisions. The Board again advised Mr. Randolph to appeal the adverse decision to an appropriate federal court, if he so chose.

Following that advice, Mr. Randolph filed suit against the government in the Claims Court in June 2016,[1] seeking review of the Board's decision as to his petition and additionally claiming that because the Article 120 violation was dropped, the whole case should have been dis-

---

[1]   Mr. Randolph initially filed suit against the government in the United States District Court for the Eastern District of Virginia, but the district court, pursuant to an agreement by the parties, transferred the case to the Claims Court. *See* 28 U.S.C. § 1631 (2012).

missed because the Article 107 and Article 133 violations stemmed from the alleged Article 120 violation. He also asserted a defamation claim against the government. The government moved to dismiss all of his claims for lack of subject matter jurisdiction, or alternatively, for judgment on the administrative record as to all claims.

The Claims Court held that it had no jurisdiction to expunge Mr. Randolph's court-martial conviction or to hear his defamation claim against the government. And it concluded that the administrative record reasonably demonstrated that he was entitled to neither back pay nor an upgraded discharge status because the Board found that he pleaded guilty to violating Articles 107 and 133, and any potential mitigating factors did not outweigh these pleas.

Mr. Randolph appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(3) (2012).

### STANDARDS OF REVIEW

We review a decision of the Claims Court dismissing claims for lack of jurisdiction de novo. *See Dehne v. United States*, 970 F.2d 890, 892 (Fed. Cir. 1992) (citing *Zumerling v. Marsh*, 783 F.2d 1032, 1034 (Fed. Cir. 1986)). The Claims Court's fact-findings in support of its jurisdictional conclusions are reviewed for clear error. *See Moyer v. United States*, 190 F.3d 1314, 1317–18 (Fed. Cir. 1999).

Similarly, we review a decision of the Claims Court granting a motion for judgment on the administrative record de novo. *See Chambers v. United States,* 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *McHenry v. United States*, 367 F.3d 1370, 1377 (Fed. Cir. 2004)). "Accordingly, we will not disturb the decision of [the Board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Id.* (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)).

DISCUSSION

On appeal, Mr. Randolph does not challenge the Claims Court's dismissal of his defamation claim. He appeals the Claims Court's judgment on the administrative record in favor of the government as to his claim for back pay and an upgraded discharge status, and its dismissal of his claim for an expungement of his court-martial conviction for lack of jurisdiction. His appeal is without merit.

## I.   Back Pay And Upgraded Discharge

The Board reasonably declined to award Mr. Randolph back pay and upgrade his discharge status, relying on his court-martial conviction. Suppl. App. at 22. Mr. Randolph pleaded guilty to violating Articles 107 and 133, and in doing so, he admitted that he sexually assaulted the Recruit and falsely stated he did not during the Navy's investigation. *Id.* at 84–88.

Mr. Randolph complains that the Claims Court did not consider an unredacted version of the court-martial record before deciding that the Board properly rejected his request for relief. *See* Informal Appellant Br. at 1 ¶ 2. As the government represents, however, these redactions were made in accordance with applicable laws and rules pertaining to personal information of third parties and minors. *See* Appellee Br. at 11 (first citing 5 U.S.C. §§ 552a(a)(4), 552a(d)(1) (2012); and then citing Fed. R. Civ. P. 5.2). Moreover, the redactions are inconsequential as they do not affect or undermine Mr. Randolph's admissions underlying his guilty pleas. *See* Suppl. App. at 84–88. The Claims Court did not err in entering judgment on the administrative record in favor of the government as to his claims for back pay and an upgraded discharge status.

## II. Expungement Of Court-Martial Conviction

The Claims Court held that it had no jurisdiction to expunge Mr. Randolph's court-martial conviction from his

military record because he did not allege any constitutional defects underlying the conviction. *Id.* at 11.

We agree. *See Matias v. United States*, 923 F.2d 821, 823 (Fed. Cir. 1990) ("We have long honored the rule that 'judgments by courts-martial, although not subject to direct review by federal civil courts, may nevertheless be subject to narrow collateral attack in such courts on constitutional grounds' when traditional Tucker Act jurisdiction is present." (quoting *Bowling v. United States*, 713 F.2d 1558, 1560 (Fed. Cir. 1983))). Mr. Randolph's petition to the Claims Court for review of the Board's adverse decisions is void of any constitutional allegation. *See Cossio v. Donley*, 527 F. App'x 932, 936 (Fed. Cir. 2013) ("[Appellant] does not contend that the court-martial proceeding was constitutionally flawed, and he has therefore not shown a basis for a collateral attack on his convictions."); *Madsen v. United States*, 31 F. App'x 710, 713–14 (Fed. Cir. 2002) (explaining that where alleged court-martial errors do not amount to impairment of constitutional due process, those errors are "unreviewable by the civilian courts").

Mr. Randolph attempts to correct his pleading deficiency on appeal by asserting that there were constitutional deficiencies in the Navy's investigation of the sexual assault, thereby tainting the court-martial conviction. *See* Informal Appellant Br. at 1 ¶¶ 3–5; *see also* Reply at 5, 7–8. But these assertions were never raised during the appeal of his court-martial conviction through the military system, let alone to the Board or to the Claims Court, and they cannot be raised now as there is no good cause for the delay. *See Martinez v. United States*, 914 F.2d 1486, 1488 (Fed. Cir. 1990) ("Absent a showing of good cause and prejudice, an appellant's failure to raise his constitutional claims in the military court system bars him from raising them in federal court." (citations omitted)). And in any event, these assertions are directly contrary to his representations to the United

States Navy-Marine Corps Court of Criminal Appeals and the United States Court of Appeals for the Armed Forces that there were no constitutional errors with the investigation or the court-martial conviction.[2]  *See* Suppl. App. at 328 (appealing court-martial conviction to United States Navy-Marine Corps Court of Criminal Appeals, but "submit[ting] the case on its merits . . . without specific assignment of errors or brief"); *id.* at 325 (appealing court-martial conviction to United States Court of Appeals for the Armed Forces, but "submit[ting] the case on its merits . . . without specific assignment of errors or brief").  Therefore, the Claims Court did not err in dismissing Mr. Randolph's claim for an expungement of the court-martial conviction from his military record.

CONCLUSION

For the foregoing reasons, we *affirm*.

**AFFIRMED**

---

[2]    In these assertions, Mr. Randolph emphasizes that the Recruit "lied" during the investigation.  *See* Informal Appellant Br. at 1 ¶¶ 3, 5; *see also* Reply at 5. But even if Mr. Randolph's constitutional challenges were properly before us, we would be in no position to assess the credibility of any statement made by the Recruit.  *See Bowling*, 713 F.2d at 1562 ("As to the credibility of the challenged witness, credibility is for the trier of fact who has had an opportunity to see and to hear the witness under oath and cross-examination. . . .  [I]t is not the responsibility of a civil court to reweigh the factual evidence[,] and in any event[,] those factual determinations made by a court-martial are not of constitutional significance, absent a showing that the trial was not a fair and disciplined contest." (citations omitted)).

COSTS

No costs.