NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SEAN J. DILLON,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-2307

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-02016-RAH, Judge Richard A. Hertling.

---

Decided: September 3, 2025

---

SEAN J. DILLON, Fort Leavenworth, KS, pro se.

KYLE SHANE BECKRICH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by ERIC P. BRUSKIN, PATRICIA M. MCCARTHY, YAAKOV ROTH.

---

Before LOURIE, TARANTO, and CUNNINGHAM, *Circuit Judges*.

PER CURIAM.

Sean J. Dillon filed a complaint against the United States in the Court of Federal Claims (Claims Court). As now relevant, he alleged that he was improperly subject to a court-martial after he had been medically retired from the United States Army, causing him to lose retirement benefits, and he sought back pay consisting of the lost benefits. The Claims Court dismissed the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. *Dillon v. United States*, No. 21-cv-02016, 2024 WL 3262822, at *5–8 (Fed. Cl. July 1, 2024) (*Dillon CFC I*); *Dillon v. United States*, No. 21-cv-02016, 2024 WL 3949062, at *1–2 (Fed. Cl. Aug. 27, 2024) (denying reconsideration) (*Dillon CFC II*). Mr. Dillon appeals. We affirm.

I

A

Mr. Dillon enlisted in the Army in 1996, served in both Iraq and Afghanistan, and suffered multiple combat-related injuries. Complaint, *Dillon v. United States*, No. 21-cv-02016 (Fed. Cl.), ECF No. 1, at 4 (Complaint); Government Supplemental Appendix at 42–43 (S. Appx.). Because of those injuries, in November 2014 the Army approved Mr. Dillon for medical retirement, with the Secretary of the Army ordering that he be retired by November 30, 2015. Complaint at 4–5. On September 11, 2015, pursuant to the Secretary's order, Mr. Dillon was sent an official notice that his retirement would begin November 29, 2015. Motion to Dismiss, *Dillon v. United States*, No. 21-cv-02016 (Fed. Cl.), ECF No. 10-1 at 3–4 (Motion to Dismiss). A discharge form gave the same date. S. Appx. at 39–40.

On November 3, 2015, however, the Army revoked Mr. Dillon's retirement orders. Motion to Dismiss, ECF No. 10-1, at 2, 5; *see* Complaint at 9. On November 25, the Army notified Mr. Dillon that he was being charged with

violating Article 120 of the Uniform Code of Military Justice, which proscribes various sex crimes. Complaint at 5. He was tried before a court-martial for aggravated sexual assault of a child in April 2016. *Id.* at 6; s*ee Dillon v. United States*, No. Army 20160324, 2019 WL 302073, at *1 (Army Ct. Crim. App. Jan. 17, 2019) (*Dillon ACCA*).

During his trial, Mr. Dillon argued through counsel that the court-martial lacked personal jurisdiction over him because he had already been medically retired from the Army. Complaint at 6. To substantiate that argument, he provided a government record that he received in April 2016 indicating November 29, 2015, as his date of retirement from active service, *see* S. Appx. at 48, and tax forms showing that he received retirement pay in 2016 and 2017, *see* S. Appx. at 44–47. The court-martial rejected Mr. Dillon's contentions, finding that he was never actually retired and that the purported notice of his retirement was "invalid." Complaint at 6. He was convicted of aggravated sexual assault of a child, among other charges, in April 2016, *id.*; s*ee Dillon ACCA*, at *1–2, and sentenced to confinement for 30 years, S. Appx. at 41.

Mr. Dillon appealed his conviction to the Army Court of Criminal Appeals and pressed the same jurisdictional argument. Complaint at 6; *Dillon ACCA*, at *1 n.2. That court held that his argument was "meritless" because, "[a]lthough [Mr. Dillon] was close to retirement before any charges were preferred, he was not, in fact, retired." *Dillon ACCA*, at *1 n.2. The United States Court of Appeals for the Armed Forces denied Mr. Dillon's petition to review that decision. *United States v. Dillon*, 79 M.J. 189, 189 (C.A.A.F. 2019). He was dishonorably discharged in July 2020. Complaint at 6–7; S. Appx. at 42–43.

B

On October 7, 2021, Mr. Dillon filed his complaint to the Claims Court seeking declaratory and injunctive relief and retirement back pay. Complaint at 9–10. He alleged

violations of the Fifth Amendment's Due Process Clause, of 10 U.S.C. §§ 1201–1202, and of Army Regulation 600-8-24 ¶ 6-23(a). Complaint at 7–9. The government moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief could be granted, and the Claims Court granted the motion. *See generally Dillon CFC I*.

The Claims Court construed the complaint as containing two claims: "first, that [Mr. Dillon] was medically retired on November 30, 2015, such that the 2016 court-martial lacked jurisdiction . . . [, and] second, even if the 2016 court-martial had jurisdiction, governing law nonetheless required that the plaintiff be medically retired . . . ." *Id.* at \*5. Noting its limited power to review the findings of a court-martial, the Claims Court held that, in the absence of a showing of a "significant constitutional defect[ ]" or lack of "fundamental fairness," it did not have jurisdiction to review the court-martial's determination that Mr. Dillon had not been retired. *Id.* at \*6 (quoting *Matias v. United States*, 19 Cl. Ct. 635, 642 (1990), *affirmed*, 923 F.2d 821 (Fed. Cir. 1990)). It further held that, although Mr. Dillon's claim for retirement back pay under 10 U.S.C. § 1201 fell within its jurisdiction, Mr. Dillon had not plausibly alleged entitlement to back pay because "a disabled soldier is not owed retirement pay until he is retired," and Army Regulation 635-40 ¶ 4-2 (2006) (the controlling version for Mr. Dillon's claim) prevents a soldier from being medically retired while under a sentence of punitive discharge. *Dillon CFC I*, at \*7. The Claims Court subsequently denied what it construed as a motion to alter the judgment under Rule 59 of the Rules of the United States Court of Federal Claims. *Dillon CFC II*, at \*1–6.

Mr. Dillon timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

Because the Claims Court's dismissal of the complaint for lack of subject matter jurisdiction and for failure to state a claim here does not rest on a resolution of factual disputes, we review the dismissal de novo. *Taylor v. United States*, 959 F.3d 1081, 1086 (Fed. Cir. 2020). Like the Claims Court, we "take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Inter-Tribal Council of Arizona, Inc. v. United States*, 956 F.3d 1328, 1338 (Fed. Cir. 2020) (internal quotation marks and citation omitted). Pro se complaints are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), but pro se litigants must meet the same "jurisdictional requirement[s]" as all others, *Kelley v. Secretary, United States Department of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

The Tucker Act defines the jurisdiction of the Claims Court to include

> any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Claims Court has jurisdiction to hear claims under 10 U.S.C. § 1201, which is money-mandating for the purposes of the Tucker Act. *See Fisher v. United States*, 402 F.3d 1167, 1174–75 (Fed. Cir. 2005) (citing *Sawyer v. United States*, 930 F.2d 1577 (Fed. Cir. 1991)). Although Mr. Dillon's claim rests on a collateral attack on the judgment of a court-martial—which determined that he was not in fact ever retired—we have viewed the presence of such a collateral attack not so much as defeating Tucker Act jurisdiction (when a claim is made under a statute authorizing claims for back pay) as

establishing a high standard for prevailing on the merits. *See Matias v. United States*, 923 F.2d 821, 822–26 (Fed. Cir. 1990). "[Q]uestions of fact resolved by military courts are not subject to collateral attack," *id.* at 826, and such an attack can succeed only in "narrow" circumstances, where the claimant "demonstrate[s] convincingly that in the court-martial proceedings there has been such a deprivation of fundamental fairness as to impair due process," *Bowling v. United States*, 713 F.2d 1558, 1560–61 (Fed. Cir. 1983). Mr. Dillon does not meet the demanding standard in this setting for having a plausible claim, as required at the pleading stage.

Mr. Dillon argues that a court-martial simply has no power to determine whether a soldier is retired. Dillon Informal Reply Br. at 15–17, 19–20 (citing *United States v. Sumrall*, 45 M.J. 207, 210 (C.A.A.F. 1996) and *Clinton v. Goldsmith*, 526 U.S. 529, 540 (1999)). At least to the extent that the issue is not a jurisdictional one, the failure to present this argument until the reply brief in this court means that the argument is untimely. In any event, the argument is unsupported. The cited decisions say at most that a court-martial cannot enjoin a retirement, *see Goldsmith*, 526 U.S. at 535, or review the Secretary's decision to deny (or grant) retirement, *see Sumrall*, 45 M.J. at 210. They do not deny that a court-martial may find *as a fact* that a soldier has been—or has not been—retired. A denial of such authority would be surprising: A court-martial, like a civilian court, must have the power to find facts determining its own jurisdiction, including whether the accused is subject to the Uniform Code of Military Justice. *See United States v. Oliver*, 57 M.J. 170, 172 (C.A.A.F. 2002) ("Jurisdiction is an interlocutory issue, to be decided by the military judge.").

Mr. Dillon also insists that he was medically retired before his conviction because, as a matter of law, his Army superiors had no authority to revoke a medical discharge order (like the September 2015 order), *see*, *e.g.*, Dillon

Informal Br. at 5–9, so that he was medically discharged by operation of law in late November 2015, regardless of the intervening revocation, *id.* at 17; *see also* Dillon Informal Reply Br. at 12–21. These are substantially the same arguments that he made to, and that were rejected by, the court-martial, and later by the Army Court of Criminal Appeals and the Claims Court. *See* Complaint at 6; *Dillon ACCA*, at \*1 n.2; *Dillon CFC I*, at \*7–8. But he "does not identify any specific constitutional defects that infected his court-martial proceedings," where, as his own complaint establishes, he was represented by counsel, had the opportunity to raise his claim of jurisdictional error, and had access to multiple levels of appeal. *Dillon CFC I*, at \*6; Complaint at 6. Mr. Dillon's jurisdictional claims have received "fair consideration," as due process requires. *Burns v. Wilson*, 346 U.S. 137, 144 (1953); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation marks and citations omitted)). He has not met the demanding standard for prevailing in a collateral attack.

In addition, Mr. Dillon has not shown error in the Claims Court's ruling that, on the facts alleged in his complaint, Mr. Dillon, once he was convicted, was ineligible for medical retirement in light of Army Regulation 635-40 ¶ 4-2 (2006) (AR 635-40), which provides that "a [s]oldier may not be referred for, or continue, disability processing if under sentence of dismissal or punitive discharge." *See Dillon CFC I*, at \*7–8; *Dillon CFC II*, at \*5. The statutes at issue do not show otherwise. Section 1201 of Title 10 provides that "[u]pon a determination by the Secretary . . . that a[n eligible service] member . . . is unfit . . . because of physical disability . . . the Secretary *may* retire the member" if the Secretary also determines that the disability is of a "permanent nature and stable," among other requirements. 10 U.S.C. § 1201 (emphasis added).

Section 1202 provides a path for service members with disabilities not determined to be "permanent" or "stable" to nevertheless be medically retired, by first being placed on the "temporary disability retired list," *id.* § 1202, and then being periodically reevaluated, *see id.* § 1210(a). Section 1202 directs that the Secretary "shall" place a service member on the temporary disability retired list "*upon [the Secretary's] determination*" that the member would be "qualified" for retirement under section 1201. *Id.* § 1202 (emphasis added). None of that forecloses the qualification-limiting provision of Army Regulation 635-40 ¶ 4-2 (2006), which prevents a soldier "under [a] sentence of dismissal or punitive discharge" from "continu[ing ]disability processing."

Mr. Dillon argues that, when the Army revoked his retirement orders on November 3, 2015, he had already completed "disability processing," as a matter of law, because he had completed such processing when his retirement order issued in September. *See* Dillon Informal Br. at 3–5; Dillon Informal Reply Br. at 6–11. We disagree. While the issuance of retirement orders corresponds to what the Army calls a "final disposition" of disability *evaluation*, *see* AR 635-40 ¶ 4-24(b) (2006), the regulatory issue is when disability "processing" ends, and "processing," naturally understood, does not end with evaluation. The term, in its ordinary meaning, extends as far as the actual discharge.

We see no good reason for a different interpretation. Indeed, context undermines the suggestion that the evaluation step ends processing. AR 635-40, which pertains to disability separations, includes an appendix titled "Personnel Processing Actions" listing events that occur during a disability retirement. *See* AR 635-40 Appendix E (2006). That list includes entries for "delivery of separation forms" and "retirement honors," which are both logically and temporally subsequent to the final disposition of the disability evaluation. *Id.* Appendix E-9–E-14 (2006). And Mr. Dillon offers no good reason why an action that is serious enough

to disqualify a member for the retirement benefit at issue, an action taken while the member is still in uniform, should be exempt from that consequence just because the retirement discharge has already been approved, though it has not yet occurred.

We have recognized that "military disability retirement benefits under 10 U.S.C. § 1201 are nondiscretionary," but that recognition means only that, "*if* a service member is eligible under 10 U.S.C. § 1201," and retired under that authority, then benefits become mandatory. *Kelly v. United States*, 69 F.4th 887, 900 (Fed. Cir. 2023) (citing *Sawyer,* 930 F.2d at 1580) (emphasis added). Such compulsion does not deprive the Secretary of authority, with a range of discretion, to make the "determination" that the service member is unfit and to decide not to "retire the member." 10 U.S.C. § 1201(a); *see Sawyer*, 930 F.2d at 1580 ("[Section 1201] *permits* the Secretary to terminate a member's active duty early." (emphasis added)). Section 1202 incorporates the same discretion by reference because it applies only "[u]pon a determination by the Secretary" that the service members concerned otherwise meet the requirements of section 1201. 10 U.S.C. § 1202.

Here, moreover, the statutory language itself suggests that Mr. Dillon became ineligible to be retired when he was convicted. *See Dillon CFC I*, at *7. Section 1201 by its terms applies to service members "entitled to basic pay," subject to narrow exceptions not relevant here. 10 U.S.C. § 1201(c). Section 1202 incorporates that limitation by requiring that the service member be "qualified for retirement under section 1201." 10 U.S.C. § 1202. But Mr. Dillon, by dint of his conviction, was no longer entitled to basic pay. *See* 10 U.S.C. § 858b (imposing "forfeiture of pay" as a consequence of certain court-martial sentences). That conclusion would make section 1201 inapplicable. At a minimum, the Secretary, following the regulation at issue, could readily deny the medical retirement.

### III

We have considered Mr. Dillon's remaining arguments and find them unpersuasive. We affirm the Claims Court's dismissal of Mr. Dillon's complaint.

The parties shall bear their own costs.

**AFFIRMED**